ARCHIBALD M. HOWE, administrator, *vs.* LAURA T. RIPKA
& another.

Suffolk.    March 16, 1908. — June 16, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Gift.*

If the owner of negotiable coupon bonds about four months before his death places
them, together with all the coupons not then due, in the custody of his sister
with the intention that they shall remain his property during his life and on his
death shall become the property of his sister, and tells her that this is his inten-
tion and she accepts the custody of the bonds on those terms, and thereafter the
coupons are collected by the owner until his death as his property, a part of them
being cut off and brought to him by his sister at his request, there is no gift of the
bonds, and on the death of the owner they pass to the administrator of his estate.

KNOWLTON, C. J.    This is a bill in equity, brought by the
administrator of the estate of Joseph F. Greenough, late of
Boston, deceased, to recover possession of coupon bonds issued
by numerous corporations, of the face value of $325,000.    It is
admitted that these bonds were formerly the property of the
plaintiff's intestate, and the question at issue is whether the
defendant, Mrs. Ripka, who will hereinafter be called the de-
fendant, acquired a title to them from the intestate, who was
her brother, by an absolute gift from him in his lifetime.    The
single justice who heard the evidence made a decree for the
plaintiff, and the defendant appealed.

There are no questions of law in dispute.    It is agreed on
both sides that, inasmuch as the evidence was for the most part
given orally and the justice saw and heard the witnesses, his
findings will not be set aside unless they are plainly wrong.
It is agreed that, unless the alleged gift was perfected so that it
took effect and became absolute in the lifetime of the intestate,
it cannot avail the defendant.    There was no testimony warrant-
ing a finding that there was a conveyance in trust, and questions
as to the validity of a power of revocation reserved in an instru-
ment or contract creating a trust are immaterial.    Preliminary
matters were undisputed, and in addition the single justice found
facts as follows:

"I further find as a fact that, some four months before his death, Mr. Greenough placed these bonds in the custody of the defendant, Laura T. Ripka, together with all the coupons thereto belonging not then due, with a possible exception hereinafter mentioned; that when these bonds and coupons were placed by Mr. Greenough in the custody of Mrs. Ripka it was his intention that they should be his during his life, and that on his death they should become the property of Mrs. Ripka, and that he told her that that was his intention, and that she accepted the custody of them on those terms.

"I further find as a fact that all the coupons originally attached to said bonds and falling due after the day when the bonds were placed in the custody of Mrs. Ripka were collected by Mr. Greenough as his property, including some twelve to twenty coupons (precisely how many was left indefinite by the evidence), which were due March 1, 1906.

"I further find as a fact that these twelve to twenty coupons, due March 1, 1906, were not cut off from the bonds to which they were originally attached at the date when Mr. Greenough placed the bonds and coupons in the custody of Mrs. Ripka. I further find as a fact that, on or about February 13, 1906, Mr. Greenough, in substance, asked Mrs. Ripka to go to the Union Safe Deposit vaults where the bonds and coupons then were and bring these twelve to twenty coupons to him, that he might deposit them for collection as his property, and that she did as he requested her to do, and that thereafter he collected these coupons as his property.

"I did not find it necessary to decide whether the other coupons, originally attached to said bonds and falling due before the date of Mr. Greenough's death but after the date on which the bonds and coupons were placed in the custody of Mrs. Ripka, had been cut off then or were cut off afterwards."

The only question that we have to consider is whether the justice should have found that there was an absolute gift, that took effect immediately, as the defendant contends, so that the intestate no longer had any right or interest in the property, or whether his finding on this point was correct.

The testimony as to the gift came from the defendant alone. A claim such as she makes in this case ought to be examined

with very close scrutiny. The effect of a strong interest upon the accuracy of the testimony of witnesses of the most honest and truthful intentions is familiar to every one who has had experience in the courts. In the effort to recall conversations or other occurrences by the aid of an imperfect memory, the influence of continuous strong feeling is often such as to produce mental pictures with forms distorted or colors changed. Of course, if a witness is not sustained by high moral principle the temptation to prevaricate may be overpowering. For these reasons, long after parties and other interested witnesses were allowed to testify in ordinary cases under our statutes, in a case like the present, where the executor or administrator was a party, or one of the parties to the contract in issue and on trial was dead, the other party was not permitted to testify. Gen. Sts. c. 131, § 14. If this trial had occurred before the passage of the St. 1870, c. 393, the defendant could not have been heard at all as a witness.

The plaintiff testified that, on the first occasion when he had a conversation with the defendant in regard to the bonds, she stated " that her brother had said to her that when he was gone, or when he had died, they would be hers and she could do as she pleased with them." She testified that the gift was made to her on November 6, 1905. Her brother died on March 20, 1906. It appeared that coupons cut from these bonds were deposited by the intestate with Kidder, Peabody and Company on November 6, November 25 and December 9, 1905, and on January 23 and February 13, 1906. These coupons were collected and the proceeds placed to his credit. Those deposited on each of these dates became due on the first day of the following month. According to the testimony of the defendant, the bonds were removed from the box of the intestate, in the vaults of a safe deposit company, to another box in the vaults of another safe deposit company. It appeared that this box was taken by her in her own name, in the presence of her brother, and that he was made her deputy, with authority to open it in her absence. After the death of the intestate she was present with the plaintiff and others when the contents of his box in the first safe deposit company were examined, and surprise was expressed by persons interested that no bonds were found. At that time, and

at different interviews which she had with the plaintiff about her brother's property, she said nothing to indicate that any bonds had been given to her, or that she had knowledge of any bonds that he had owned, and it was not until the administrator told her of the discovery that her brother was depositing coupons from bonds with Kidder, Peabody and Company up to very nearly the time of his death, and asked her directly about them, that she gave any information on the subject.

She testified that her brother never gave her any information as to the magnitude of the gift, or the number or amount of the bonds, and she never investigated nor had any knowledge on the subject until after her his death, except that she knew something about the bonds from having sometimes assisted him in cutting off coupons before the gift was made. She also testified that, on the day when the gift was made, he said nothing to her about making the gift or removing the bonds until after he had gone to the safe deposit company, whither she accompanied him in a carriage, and that the bonds were brought out and put into the carriage before a word had been spoken in regard to a gift, or to where they were to be put. It also appeared that, in February, 1906, he bought other bonds which she said he gave her, and which she put in the box with the others.

She testified in explanation of these matters, saying that when he gave her the bonds he told her he had cut off future coupons such as he chose, and that she afterwards cut off the coupons that became due in March and gave them to him as a present. She also testified that he told her of his intention to give her the bonds a considerable time before the gift was made.

There was testimony as to her having caused a will to be made for him, by his direction, a few days before his death, which will was very favorable to her in its provisions, but contained no mention of several others of his heirs at law with whom he was on friendly terms. She testified that she sent for persons to be present as attesting witnesses at the execution of this will, but after their arrival he refused to execute it.

It is unnecessary to review the evidence at length. After a careful examination of the voluminous testimony, giving due weight to the explanations and circumstances favorable to the defendant's contention, we are brought not only to the negative

conclusion that the decision of the single justice does not appear to be wrong, but also to a satisfactory affirmative opinion that the printed evidence shows it to be right.

*Decree affirmed.*

*H. Parker*, (*L. A. Frothingham & H. H. Fuller* with him,) for the plaintiff.

*H. E. Bolles & G. Cunningham*, for the defendants.