BAUSH MACHINE TOOL COMPANY *vs.* CHARLES J. HILL & others.

Hampden.   May 20, 1918. — July 16, 1918.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Unlawful Interference.   Labor Union.   Strike.   Equity Pleading and Practice,*
   Master's report.

In a suit in equity against the members of a labor union to enjoin them from in-
   terfering with the plaintiff's business by aiding or abetting a strike in force
   against the plaintiff, if it appears that one of the purposes of the strike was an
   unlawful purpose, it is not necessary to consider the legality of another alleged
   purpose of the strike, because a strike for both a lawful and an unlawful purpose
   is illegal.

In a suit in equity against the members of a labor union to enjoin them from in-
   terfering with the plaintiff's business by aiding or abetting a strike in force against
   the plaintiff, it appeared that one purpose of the strike was to unionize the plain-
   tiff's shop, an unlawful purpose, and that another purpose was to obtain an in-
   crease of wages, a lawful purpose, and a temporary injunction was issued
   enjoining the defendants from combining for the purpose of compelling the plain-
   tiff to maintain a closed shop "unless and until the defendants shall formally
   renounce the purpose aforesaid and give notice to the plaintiff of such renuncia-
   tion."   There were two hundred and fifty defendants, all members of the union.
   Of these twenty-eight signed a letter and mailed it to the plaintiff stating "their
   renunciation of their combination or conspiracy to interfere with the plaintiff's
   business" for the purpose of unionizing the plaintiff's shop and their aiding or
   abetting the strike against the plaintiff for that purpose. These twenty-eight de-
   fendants moved to amend their answer by setting forth this renunciation, and the
   motion to amend was allowed against the objection of the plaintiff.   The trial
   judge found that the twenty-eight defendants "had notified the plaintiff by mail-
   ing to it" the letter described above of their renunciation therein stated, but it
   appeared that these twenty-eight defendants did not leave the union nor an-
   nounce a purpose of doing so and that the notice contemplated that the unlawful
   strike should continue in force and it did so continue.   *Held,* that, if the motive
   of the twenty-eight defendants in continuing the strike was merely to obtain a
   raise in wages, this motive for their continuing to be parties to an unlawful
   strike was immaterial and afforded no ground why these twenty-eight defendants
   should not be enjoined with the other two hundred and twenty-two defend-
   ants from maintaining the unlawful strike.

In the suit above described the defendants filed an exception to a finding in the mas-
   ter's report, that the constitution of the Employers' Association would not prevent
   the plaintiff from settling the strike, on the ground that this finding was a
   conclusion of law.   The constitution of the Employers' Association was not be-
   fore the court.   *Held,* that, in the absence of evidence on the subject, the court
   could not say that the finding was a conclusion of law; and it also was *pointed
   out,* that, if the exception were sustained and this finding of the master were
   stricken from the report, it would not help the defendants.

In the same suit the defendants filed another exception to the master's report on the ground that the plaintiff belonged to the Employers' Association, which was an unlawful one in restraint of trade, and that the plaintiff therefore could not have come into court with clean hands, and undertook to state certain facts in regard to that association. The master in his report did not state that any evidence of the alleged facts referred to in the exception was introduced before him. *Held,* that the exception must be overruled because it rested merely on the assertion of counsel.

An exception to a master's report in a suit in equity must be based on matters appearing on the face of the report and an exception resting only on the assertion of counsel cannot be considered.

In the same case the trial judge had denied a motion of the defendants to recommit the case to the master "for the reasons set forth in their exceptions," and it was *pointed out* that this motion was addressed to the discretion of the trial judge and that there was nothing to indicate an abuse of discretion in denying it, and it also was *said* that, for all that appeared, the trial judge received and considered evidence as to the truth of the alleged facts on which the motion was based and found that the allegations were not true.

In the same case it was *pointed out* that, as the strike was for an unlawful purpose, it was not necessary to consider whether the means employed by the defendants were lawful or unlawful.

BILL IN EQUITY, filed in the Superior Court on September 11, 1917, by a corporation engaged in the business of manufacturing machines and machine tools and having a usual place of business in Springfield, against the officers and members of two voluntary unincorporated associations known as the International Association of Machinists, Locals 214 and 682, to enjoin the defendants from unlawfully interfering with the plaintiff's business by aiding or abetting a strike in force against the plaintiff.

The case was referred to a master, who filed a report, the material parts of which are described in the opinion.

The tenth paragraph of the defendants' answer was as follows:

"10. Further answering to the plaintiff's bill of complaint the defendants say that the plaintiff is a member of an association of employers who are opposed to labor organizations; that by the constitution and by-laws of said association the plaintiff is not allowed to settle any labor controversy with its employees under penalty of a fine or other punishment; that if left to its own devices and wishes the plaintiff in this case would have come to an agreement with the defendants, but that the said association through its officers or attorneys interfered in the situation without right and prevented the plaintiff by threats of boycott and

future injury to its business from dealing with and settling this dispute with the defendants."

On this matter the master made the following finding:

"Since the strike began the company has become a member of the Employers' Association of Hampden County. The principal object of this association is to render assistance to its various members and to foster the principle of the open shop. The provisions of the constitution of the association would not prevent the company from settling the strike in question, and there was no evidence that any attempt had been made to adjust it."

After the filing of the master's report a motion of the plaintiff for a temporary injunction was heard by *Callahan,* J., who made the following interlocutory decree:

"The above entitled case came on to be heard on the plaintiff's motion for a temporary injunction after the filing of the master's report, and thereupon, upon consideration thereof, and upon hearing the parties, it is ordered, adjudged and decreed, That an injunction issue *pendente lite* to remain in force until the further order of this court or of some Justice thereof restraining the defendants individually named in the plaintiff's bill and the members of said Locals 214 and 682, their agents, servants and confederates, and each and every of them, from combining or conspiring together to interfere with the plaintiff's business for the purpose of compelling the plaintiff to maintain a so called 'closed shop,' or in any manner carrying on, aiding or abetting the said strike against the plaintiff for the purpose aforesaid; and, unless and until the defendants shall formerly renounce the purpose aforesaid and give notice to the plaintiff of such renunciation, further restraining them, their agents, servants and confederates, and each and every of them, from carrying on, aiding or abetting, in any manner whatsoever, said strike for any purpose."

After the order confirming the master's report, which is mentioned in the opinion, the defendants filed the following motion to amend their answer:

"And now come the defendants in the above entitled action and move to amend their answer originally filed therein by adding thereto the following:

"And the defendants further answering, say that the following named, all of whom are defendants in the said action, to wit,

William A. Fronk, David H. Hatch, George W. Loyd, Andrew Soitzer, Walter Worden, Fred A. Thompson, John D. Neilan, George M. Hayes, George Cloutier, Alcide Bourdear, Andrew Grimes, Leon Soland, Joseph William Allard, John J. Kinetter, William J. Bousquet, Charles Johnston, John Brobery, Leland E. Breyer, Lafayette B. Price, Clarence W. May, William J. Murphy, Charles J. Hill, Benjamin Cohan, Jno. W. Oliver, F. J. Carlin, Roy Quigley, Emil Trempke, and Fred Keating, have, since the filing of the plaintiff's bill of complaint herein, abandoned and renounced and do hereby furthermore abandon and renounce the purpose of compelling the plaintiff to maintain a so called closed shop or the said apprentice system, so called, and also the purpose of carrying on, aiding, or abetting in any manner the said strike against the said plaintiff for the said purposes aforesaid of maintaining the closed shop, so called or, the said apprentice system, so called, or any other unlawful object in connection with the said strike and the maintenance thereof; and have refrained from participating and do furthermore purpose to continue to refrain from participating in the said strike for the purpose of compelling the plaintiff in any manner to maintain the said so called closed shop or the said so called apprentice system, or for any other unlawful object; and have furthermore communicated to the plaintiff the fact of their said abandonment and renunciation of all the said purposes aforesaid."

This motion was heard by *Callahan, J.,* who made an order allowing the amendment.

Both parties filed exceptions to the master's report. The defendants' third, fourth and fifth exceptions, relied upon by them, which are referred to in the opinion, were as follows:

"3. Because the finding in the second paragraph on page 10, that the provisions of the constitution of the Employers' Association would not prevent the plaintiff from settling the strike, is a conclusion of law.

"4. Because there was evidence that the plaintiff belonged to an association called the Employers' Association, the rules and by-laws of which prevented the plaintiff from dealing with his men or with the defendants without first consulting the association; that said rules and by-laws disclose the fact that the association is an illegal one and in restraint of trade and that the plaintiff

could not have come into court with clean hands; that the members of said association were assessed for the purpose of resisting strikes in the shops of the various members and that if any member of said association violated the rules or regulations they were liable to a heavy fine; that the plaintiff could not withdraw from said association; that said rules and regulations show that the plaintiff was engaged in conspiracy against the defendants; and because all of the above evidence has been ignored by the master and no finding setting forth the above facts has been made by him.

"5. Because the master allowed a witness upon a material point to refresh his recollection as to what happened some weeks before, from the memorandum made fifteen minutes before the witness testified."

The plaintiff's motion for a final decree granting a permanent injunction was heard by *Callahan*, J., who made the following memorandum of findings of fact:

"I find that since the entry of the decree for a temporary injunction that of the defendants those whose names are signed to the letter hereinafter mentioned, members of Local No. 214 and Local No. 682, International Association of Machinists, have notified the plaintiff, by mailing to it the following letter, of their renunciation of their combination or conspiracy to interfere with the plaintiff's business, for the purpose of compelling the plaintiff to maintain a so called 'closed shop' and of their purpose of in any manner carrying on, aiding or abetting the strike declared in pursuance of said combination or conspiracy against the plaintiff for that purpose.

"'Springfield, Mass., Nov. 22, 1917.

"'We the undersigned members of Local No. 214 and Local No. 682 International Association of Machinists do hereby renounce and have renounced the closed shop principle, so-called, and any other unlawful object in connection with the Baush Machine Tool Co. strike and the maintenance thereof.

| | |
|---|---|
| Wm. A. Fronk | William J. Bousquet |
| David H. Hatch | Chas. Johnston |
| Geo. W. Loyd | John Brobery (his mark) |
| Andrew Soitzer | Witness John F. Jennings |
| Walter Worden | Leland E. Breyer |
| Fred A. Thompson | Lafayette B. Price |

| | |
|---|---|
| John D. Neilan | Clarence W. May |
| Geo. M. Hayes | William J. Murphy |
| George Cloutier | Charles J. Hill |
| Alcide Bourdear | Benjamin Cohan |
| Andrew Grimes | Jno. W. Oliver |
| Leon Soland | F. J. Carlin |
| Joseph Wm. Allard | Roy Quigley |
| John J. Kinetter | Emil Trempke |
| | Fred Keating'" |

The judge ordered the entry of a final decree as follows:

"This case came on to be further heard at this sitting, and, after a finding of fact by the court, memorandum of which has been filed, was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed, That a permanent injunction issue, restraining the following defendants: William A. Fronk, David H. Hatch, George W. Loyd, Andrew Soitzer, Walter Worden, Fred A. Thompson, John A. Neilan, George M. Hayes, George Cloutier, Alcide Bourdéar, Andrew Grimes, Leon Soland, Joseph William Allard, John J. Kinetter, William J. Bousquet, Charles Johnston, John Brobery, Leland E. Breyer, Lafayette B. Price, Clarence W. May, William J. Murphy, Charles J. Hill, Benjamin Cohan, Jno. W. Oliver, F. J. Carlin, Roy Quigley, Emil Trempke and Fred Keating, their agents, servants and confederates, and each and every of them, from combining or conspiring together to interfere with the plaintiff's business, for the purpose of compelling the plaintiff to maintain a so called 'closed shop,' or to limit the number of apprentices it might employ in carrying on its business, or in any manner aiding or abetting the carrying on for those purposes of the strike declared against the plaintiff; restraining all other defendants, their agents, servants and confederates, and each and every of them, from carrying on, aiding or abetting, in any manner whatsoever said strike for any purpose; and restraining the persons whose names are hereinbefore mentioned from intimidating, annoying or threatening any person now or hereafter in the employment of the plaintiff, or desirous of entering the same, and maliciously inducing any persons now or hereafter in the employment of the plaintiff to leave the same, or from inducing or attempting to induce any person or persons now or hereafter in the employ-

ment of the plaintiff to break any contract of employment with the plaintiff, and from congregating in squads near the plaintiff's premises in any other than a peaceful manner."

Both the plaintiff and the defendants appealed from the decree. The case was submitted on briefs.

*J. J. Feely*, for the plaintiff.

*F. W. Mansfield & J. F. Jennings*, for the defendants.

LORING, J. This is a bill in equity brought against the members (something over two hundred and fifty in number) of two labor unions to enjoin them "from interfering with the business of the plaintiff . . . by maintaining, carrying on, aiding or abetting in any manner the strike now in force against the plaintiff." The case was sent to a master. The master found that the members of the two unions had struck to get an increase of pay, to unionize the plaintiff's shop and to limit the number of apprentices. The plaintiff and the defendants are at issue on the legality of a strike to limit the number of apprentices. But both the plaintiff and the defendants agree that a strike to unionize an employer's shop is an illegal strike and that a strike for an increase in wages is a legal strike. Without question a strike for both a legal and an illegal purpose is an illegal strike and no contention has been made to the contrary. It is not necessary therefore to consider the legality or illegality of a strike to limit the number of apprentices and we lay that purpose of the strike on one side as a matter of no consequence.

On the coming in of the master's report a temporary injunction was issued restraining the defendants from combining for the purpose of compelling the plaintiff to maintain a closed shop "unless and until the defendants shall formally renounce the purpose aforesaid and give notice to the plaintiff of such renunciation." The temporary injunction is set forth on page 32. After this (with an exception of no importance) the master's report was confirmed. After confirmation of the master's report the "defendants" moved "to amend their answer" by alleging that twenty-eight of the defendants (named in the motion to amend) have renounced the purpose of compelling the plaintiff to unionize his shop and also the purpose of aiding the strike against the plaintiff for that purpose. The motion to amend is set forth in full on pages 32, 33. The motion to amend was allowed against the objection of the

plaintiff. Thereafter a judge of the Superior Court found that twenty-eight defendants had "notified the plaintiff by mailing to it" a letter dated November 22, 1917, and signed by them "of their renunciation of their combination or conspiracy to interfere with the plaintiff's business" for the purpose of unionizing the plaintiff's shop, and of their purpose of aiding or abetting the strike against the plaintiff for that purpose. The letter was made a part of the finding and was in these words: "Springfield, Mass., Nov. 22, 1917. We the undersigned members of Local No. 214 and Local No. 682 International Association of Machinists do hereby renounce and have renounced the closed shop principle, so-called, and any other unlawful object in connection with the Baush Machine Tool Co. strike and the maintenance thereof." Later on a final decree was entered permanently enjoining the twenty-eight defendants who signed this letter from interfering with the plaintiff's business for the purpose of compelling it to maintain a closed shop or to limit the number of apprentices "or in any manner aiding or abetting the carrying on for those purposes of the strike declared against the plaintiff; [and] restraining all other defendants . . . from carrying on, aiding or abetting, in any manner whatsoever, said strike for any purpose." The decree is set forth in full on page 35. From this decree appeals were taken both by the defendants and by the plaintiff.

By allowing the amendment to the answer the judge permitted twenty-eight of the two hundred and fifty defendants to sever and set up a defence different in part from that set up by the remaining two hundred and twenty-two. This aspect of the case was ignored by the defendants' counsel in the form of his motion to amend and in the appeal which was taken by him from the final decree.

The contention made in behalf of the twenty-eight is that on the record it must be taken that the judge was satisfied that they had renounced any purpose of continuing parties to the strike so far as the strike was for the purpose of unionizing the plaintiff's shop and that being so that they should not have been enjoined from participating in the strike for that purpose. In other words the contention in behalf of these twenty-eight defendants is in effect that they have ceased to be parties to any illegal strike and therefore ought not to have been enjoined as they were enjoined from

doing the thing which they had renounced an intention of doing. We are of opinion that there would be no answer to the contention if the premises on which it is based had been true. But they are not true.

In the first place it is to be observed that the finding made in the Superior Court falls short of what the twenty-eight defendants contend that it is. All that the judge found was that these twenty-eight defendants had "notified the plaintiff by mailing to it" (their letter dated November 22) that they "renounced the closed shop principle so called, and any other unlawful object in connection" with the pending strike. That is a guarded finding and does not go as far as the twenty-eight defendants contend that the judge's finding went.

What the twenty-eight defendants did was done pursuant to the scheme which first made its appearance in the temporary injunction. It was there provided that the temporary injunction should continue in force "until the defendants shall formally renounce the purpose" "of compelling the plaintiff to maintain a so called closed shop." By the terms of this provision it was not contemplated that the defendants who renounced the purpose of compelling the plaintiff to maintain a closed shop should renounce their membership in the union. There were two unions, but for convenience we speak of one union and of the defendants as members of the union. On the record it must be taken that the twenty-eight defendants (who took advantage of this provision in the temporary injunction by giving notice of their renunciation of the illegal purpose of the strike) did not in fact leave the union. Furthermore it was not contemplated as part of the scheme put forward in the temporary injunction that the illegal strike which had been called and which was then being conducted and maintained by the union should come to an end. It was contemplated on the other hand that it should continue in force. Finally under the notice of renunciation which was given by the twenty-eight it was contemplated that the illegal strike called and maintained by the union should continue in force and it did continue in force.

What then was the situation which came into existence by reason of the notice of renunciation by these twenty-eight members of the union who did not leave the union and who contemplated that in

spite of their renunciation of the illegal purpose of the strike the illegal strike of the union would continue in force?

In the first place so long as the union continued the illegal strike and these twenty-eight defendants continued to be members of the union, the money of the union (which was their money as well as the money of the other two hundred and twenty-two members of the union) could be used by the union in paying strike benefits, for example, or in any other way for the purpose of furthering the illegal strike. More than that since the twenty-eight defendants were to continue members of the union they could be disciplined in any way in which a majority of the union could legally discipline its members in order to further the union's illegal strike which it was contemplated should continue in force. For example: The twenty-eight defendants since they were still members of the union could be assessed to raise money to pay strike benefits to those out of work because engaged in this illegal strike in case and when the then present funds of the union should have been exhausted.

What then is the result of the twenty-eight having "renounced the closed shop principle, so called, and any other unlawful object" of the illegal strike of the union of which they were and were to continue to be members? Suppose that at the time when the question of strike or no strike was before the union originally the twenty-eight had voted to strike for an increase in wages only and the other two hundred and twenty-two had voted to strike for that and the unionizing of the plaintiff's shop. And suppose that on this vote being announced the twenty-eight had stated that they elected to remain members of the union and also stated that so far as they were concerned they should take part in the illegal strike (voted for by the two hundred and twenty-two) only for the purpose of securing an increase of pay. What would that have amounted to? It would have been nothing more than a statement of the motive which actuated the twenty-eight in remaining members of the union and so of necessity parties to the illegal strike called and maintained by the union. The motive of the twenty-eight in being parties to the illegal strike would have been of no consequence. Their liability is determined by the character of the strike not by their motive in electing to be parties to that strike; their liability is determined by the fact that they elected to remain

parties to an illegal strike and not by their motive in doing so. See, for example, in this connection *Berry* v. *Donovan,* 188 Mass. 353, 356, where it was said: "An intentional interference with such a right [the right of a plaintiff to have the benefit of his contract], without lawful justification, is malicious in law, even if it is from good motives and without express malice." The subsequent renunciation made by the twenty-eight defendants of "the closed shop principle, so called, and any other unlawful object" of the illegal strike, called and then maintained by the union of which they were and were to continue members and to which (illegal strike) by reason of the fact that they elected to continue members of the union they were of necessity parties, was nothing more than a statement of their motive in remaining parties to the illegal strike. A party to a strike which is illegal because it is a strike to unionize a shop as well as to get higher wages is a party to an illegal strike although so far as he is concerned he either became or continued a party to it only to get an increase of pay. The twenty-eight wanted a legal strike for an increase of pay only. That is plain. It is plain also that they wanted to get out of the illegal strike then being maintained by the union of which they were members. But they did not want to leave the union. To get out of the strike and to keep in the union they hit upon the novel scheme of renouncing the illegal purpose of the strike. But that was a futile proceeding, being, as it was, nothing more than a statement of their motive in continuing members of the union and so of necessity parties to the illegal strike. It had no effect upon their liability as parties to the strike and in the final decree no distinction should have been made between the twenty-eight and the two hundred and twenty-two members of the two unions here in question.

In addition to the contention of the twenty-eight which we have just dealt with the defendants rely on the third, fourth and fifth exceptions to the master's report set forth on pages 33, 34.

Their contention as to the third exception is that the finding there attacked is a conclusion of law. The rule to the master in the case at bar directed him to "make report of the facts." Under that form of a rule a master should not state conclusions of law. *Cook* v. *Scheffreen,* 215 Mass. 444, and cases there collected. The terms of the constitution of the Employers' Association are not before us. Under these circumstances we cannot say that the finding

is a conclusion of law. It is not improper to add that it would not help the defendants if the exception were sustained and this finding were stricken from the report.

The master in his report does not state that the evidence referred to in the fourth exception was introduced before him. An exception to a master's report must be founded on matters which appear on the face of the report. *Cook* v. *Scheffreen, ubi supra,* and cases there collected. This exception rests on the assertion of counsel only. For that reason it must be overruled.

The fifth and last exception is disposed of by the cases already cited in which it has been decided that an exception must be based on matters appearing on the face of the master's report and that an exception resting on the assertion of counsel is not well taken.

The defendants made a motion to recommit the case to the master "for the reasons set forth in their exceptions." For all that appears the judge who heard this motion went into evidence as to the truth of the facts on which this motion was based and found that they were not true. Apart from that the motion is addressed to the discretion of the judge and there is nothing to show that there was an abuse of discretion in denying this motion. See, for example, *Warfield* v. *Adams,* 215 Mass. 506; *American Circular Loom Co.* v. *Wilson,* 198 Mass. 182; *Barnett* v. *Rosenberg,* 209 Mass. 421; and *Smith* v. *Lloyd,* 224 Mass. 173.

As the strike was an illegal one, it is not necessary to consider whether the means employed by the defendants were lawful or unlawful.

A part of the final decree is right in substance but that part is wrong in form. The rest of it is wrong in both.

The result is that the interlocutory decree overruling the exceptions taken to the master's report, refusing to recommit the case to the master and confirming that report must be affirmed. The final decree must be reversed and a decree entered perpetually enjoining the defendants and their servants, agents and attorneys and each and all of them from combining to interfere with the business of the plaintiff by carrying on, aiding or abetting the strike called in August, 1917, by local Unions 214 and 682 of the International Association of Machinists; and it is

*So ordered.*