ROGER E. TILESTON *vs.* REGINA G. TILESTON & others.

Norfolk. December 3, 1919. — January 9, 1920.

Present: RUGG, C. J., DE COURCY, CROSBY, & PIERCE, JJ.

*Gift. Husband and Wife. Trust,* What constitutes.

The owner of shares of the capital stock of a corporation, at a time when he was living happily with his wife and children and when he actively was engaged in a partnership business, conveyed the shares through a third person to his wife, no money consideration being paid by any one. The certificate of the shares

remained in the husband's possession.  Two years later the wife by indorsement and without consideration transferred a part of the shares to the third party and they were used as collateral security by the husband.  Six years later the wife indorsed and delivered the certificate for the shares to three trustees of a voting trust of the stock of the corporation, of whom the husband was one, and the trustees delivered to her and she receipted for a trustee's certificate stating that she was entitled to the beneficial interest and rights in the shares. After she had received the trustee's certificate, the wife delivered it to her husband, who placed it in his safe deposit vault box.  The next year the wife signed a power of attorney which permitted the husband to use a part of the shares as collateral for a loan made to him, and later he substituted shares of his own for those standing in her name and returned the certificate representing shares in her name to his safe deposit vault box.  One dividend on the shares had been paid by a check to the wife's order which had been deposited in a joint account of the husband and wife.  Twelve years after the original transfer of the shares to the wife, she obtained a divorce from her husband.  The next year he brought a suit in equity against her to compel a transfer of her interest in the shares to him.  The suit was referred to a master, before whom, besides evidence of the foregoing facts, there was evidence of other transactions and transfers of property which were carried on by the husband in the wife's name but were for his benefit solely.   The husband testified in substance that he placed the shares in his wife's name so that they would not be subject to the liabilities of a partnership of which he was a member.   The wife testified that she understood the transfer was made to her to make provision for her and the children in case of her husband's death and that she was the owner of the stock.  The master found, without a report of the evidence, that there was no intention to create a trust and that none was created, and that whatever the husband did with the shares he did as his wife's agent and not as the beneficial owner.  The report was confirmed and a final decree was entered dismissing the bill.  The plaintiff appealed.  *Held*, that the master's findings warranted his conclusion, and that the decree must be affirmed.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 28, 1916, to compel the defendant, Regina G. Tileston (hereinafter called the defendant), who formerly was the wife of the plaintiff but who had procured a divorce from him in 1915, to convey to the plaintiff all her right, title and interest in three hundred shares of the capital stock of the Tileston and Hollingsworth Company, a corporation, and in a certificate, representing those shares, of trustees under a voting trust of the shares of stock in that corporation.

In the Superior Court the suit was referred to a master.  Material facts found by the master are described in the opinion.  The plaintiff filed objections and exceptions to the master's report, among others to the refusal of the master to give the following rulings asked for by the plaintiff:

"1. The transactions between the plaintiff and the principal

defendant, Regina G. Tileston, with reference to (a) the shares of the National Coated Paper Corporation, (b) the homestead real estate in Sharon, (c) the Mattapan real estate, and (d) the investment of $500 made by the plaintiff for the defendant, and the defendant's dealings in shares of the Ohio Oil Company, are material and competent as bearing upon the understanding and intention of the parties with reference to the shares of the Tileston and Hollingsworth Company.

"2. The certificate in controversy was not delivered to the defendant.

"3. If there was a gift of the shares in question by the plaintiff to the defendant, such gift could be revoked at any time during his life.

"4. The shares in question were transferred to the name of the defendant with the understanding that she should hold them subject to the direction or order of the plaintiff.

"5. The trustees' certificate representing the shares in question has been in the possession of the plaintiff since its issuance, he pledged it to secure a loan for his own use, and the defendant made no claim to said certificate or to the shares evidenced thereby up to the time when the plaintiff requested her to assign said trustees' certificate to the plaintiff.

"6. Said shares were transferred by the plaintiff to the defendant through a third party, without consideration, the certificate remained in the possession of the plaintiff and such transfer was made without it being clearly understood between the plaintiff and the defendant that said shares were transferred for her individual benefit.

"7. The stock in question was transferred to the defendant without consideration and merely as a matter of convenience, and a trust was thereby created under which she held said shares in her name as the property of the plaintiff.

"8. The defendant allowed said shares to remain in the possession of the trustees after the determination of the trust agreement, without making any claim thereto, and this fact is evidence that she did not claim ownership of said shares."

The suit was heard by *Braley*, J., by whose order there were entered an interlocutory decree overruling the plaintiff's exceptions to the master's report and confirming the report, and a final decree dismissing the bill. The plaintiff appealed.

*A. F. Flint,* for the plaintiff.

*A. Marshall,* for the defendants.

PIERCE, J. This is a suit in equity wherein the plaintiff seeks the aid of the court to compel the defendant to assign and transfer to the plaintiff all the right, title or interest which the defendant has or may claim in three hundred shares of stock, or in trustees' certificates of that stock. The case was referred to a master "to hear the parties and their evidence, to find the facts, and report the same to the court." The master heard the parties and their evidence and made a report of his findings of fact, without reporting the evidence. The case comes before this court on appeals from interlocutory and final decrees overruling exceptions and dismissing the bill.

From the findings of fact it appears that in 1903 the plaintiff and defendant, with three children, were living together happily as husband and wife; that the husband then owned, with other property, seven hundred shares of Tileston and Hollingsworth stock, which he had received through inheritance; that he was then actively engaged in a partnership business; that he transferred four hundred out of the seven hundred shares to one Child on the transfer books of the corporation; that Child immediately transferred such shares, by the direction of the plaintiff, to the defendant, which transfer was also duly recorded on the books of the corporation; that a certificate for four hundred shares was issued in the name of the defendant; that she knew of the transfer; that no money consideration was paid by Child or by the defendant to the plaintiff; that the evidence does not disclose a physical delivery of the certificate to the defendant; that the certificate was taken directly from the office of the corporation to the safe deposit box of the plaintiff and was there subsequently kept except when taken out and dealt with as the master described.

In 1905, the defendant without any consideration transferred the four hundred shares by indorsement, one hundred shares to Child and three hundred to herself, and new certificates were issued accordingly. The one hundred shares were used by the plaintiff as collateral, and the certificate of three hundred shares was kept by the plaintiff in his deposit vault until a voting trust was formed in April, 1911.

The trustees of the voting trust were the plaintiff and the defend-

ants Eustis and Dunbar. With them, as trustees, the plaintiff deposited his remaining four hundred shares, his mother's one thousand three hundred and twenty-eight shares, and the defendant's three hundred shares. Soon after the defendant had transferred to the trustees the shares of stock standing in her name, the plaintiff and his co-trustees issued and mailed to the defendant "Trustees' Certificate No. 4," which recited as follows: "This certifies that Regina G. Tileston is entitled to the beneficial interest and rights attaching to three hundred shares of stock in Tileston and Hollingsworth Company held by us under a Declaration of Trust dated April 25th, A. D. 1911, to all the terms of which the holder of this certificate by acceptance thereof expressly assents." The defendant received the Trustees' Certificate No. 4, and signed and sent to the trustees a receipt therefor. After the certificate had been received and receipted for by the defendant, she handed it to the plaintiff, who put it in his box in the safe deposit vault.

In 1912, as a temporary matter and until the plaintiff could get a certificate of his own two hundred shares, the defendant signed for him a power of attorney to transfer her certificate for three hundred shares as collateral for a loan to the husband. In the fall of that year he substituted a certificate for two hundred shares in his own name for his wife's certificate and redeposited her certificate in his safe deposit vault. The certificate representing the three hundred shares is now in the possession of one of the trustees under a stipulation. A dividend was paid on the shares of stock in 1903. The dividend on the stock standing in the name of the defendant was paid in instalments by checks, which were drawn payable to her order, were indorsed by her and deposited in a bank to the joint account of the plaintiff and the defendant. No dividend on the stock has been declared since 1903.

To show the intention of the parties in this transaction, evidence was introduced of a transfer of stock in the National Coated Paper Company in 1903 to the defendant, and a transfer back from her to the plaintiff in 1906; a purchase of real estate in her name in 1904 and a conveyance to him through a conduit; a transfer to the defendant of real estate in 1898 which was sold in part and the proceeds used by the plaintiff, and the remaining portion transferred to the mother of the plaintiff to satisfy a mortgage which she

held. The facts found show that the defendant paid nothing for any transfer and received no benefit from any of these transactions. She held title to an acre of land for which the plaintiff paid $500, and the deed was kept in the custody of the plaintiff until after the defendant was divorced in 1915, when it was delivered to her. She held stocks of small value which the plaintiff had purchased with money saved by the defendant from her allowance; the certificates were retained in his custody.

As a reason for making the transfer of the stock in the Tileston and Hollingsworth Company the plaintiff testified: "I was at the time in partnership with another man and liable for all his debts if he signed notes or indorsed paper for any one else, and as our business was expanding and not specially prosperous I did it under those conditions." In regard to the transfer of shares to the defendant in the National Coated Paper Company, the plaintiff testified: "The objects were practically identical with the other transaction . . . that I was in business and desired to have part of my property where it wouldn't be subject to failure or to my partner's misdeeds or troubles." He further testified that he had in mind making provision for the family "not exclusively wife and children; it was to save some property from the wreck." He also testified that he did not intend at the time to make a gift of the stock; and the defendant testified that she understood at the time of the transfer that the plaintiff transferred the stock to her to make provision for his wife and children in case of his death, and that she understood she then became the owner of the stock.

Giving full credence to the testimony of the plaintiff, and to the evidence that supports his contention, the master could have found that the wife received the stock on a trust to redeliver it to her husband when and as he should direct. Disbelieving that evidence he could have found that the husband intended that the wife should hold the stock to the use of herself and their children; or he could find that the plaintiff by the transfer of the stock through a third person to his wife intended to make and the wife intended to receive it as a gift. In fact the master found "that there was no intention to create a trust in the mind of either party," and "that no trust was created." He further found "that in all that Mr. Tileston has done with the certificates representing the stock and standing in the defendant's name he has acted simply

as her agent and not as the beneficial owner;" and, also, that "the existence of the children, the dependence of Mrs. Tileston and the children on the plaintiff for support all render it very natural that he should have wanted to give property to his wife."

The facts found by the master, taken in connection with the presumption of a gift or advancement, support his ultimate conclusion of fact that the transfer of stock was not intended to be held by the wife in trust for the husband but was intended to be and in fact was a complete gift. It cannot be said the conclusion of fact was clearly wrong; it therefore stands affirmed. *Pollock* v. *Pollock*, 223 Mass. 382. *English* v. *English,* 229 Mass. 11.

We have given most careful examination to the exceptions and find nothing in them which would justify, much less require, a reversal of the ultimate conclusion of the master. It follows that the interlocutory decree and the final decree must be affirmed with costs.

*Decree accordingly.*