## WILLIAM F. DANIELS *vs.* SARAH W. DANIELS.

Suffolk. November 8, 1921. — February 28, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Equity Pleading and Practice,* Master. *Evidence,* Inference, Absence of witness, Admission.

A master, to whom a suit in equity was referred under a rule which required him "to hear the parties and their evidence and report his findings to the court on or before [a certain date] together with such facts and questions of law as either party may request," is not required to report the evidence or any part of it.

At the hearing by a master of a suit in equity by a man against one who, when the suit was brought, was his wife but who, while the suit was pending, was granted a decree of divorce for his wrong, to compel conveyance to the plaintiff of certain real estate, the legal title to which, he alleged, was placed in the defendant's name although it was purchased with his money and she had no interest in it, the plaintiff testified that, in the presence of other persons when the final arrangements for the passing of papers were being made, he said to the defendant that she had no interest in the property and that she assented thereto. The defendant denied that such a statement was made. The plaintiff did not call as witnesses those whom he had testified were present when those conversations were held, and from that fact the master drew an inference unfavorable to him. *Held,* that there was no error of law in drawing such an inference.

Findings of fact by a master to whom was referred a suit in equity under a rule

which required him " to hear the parties and their evidence and report his findings to the court on or before [a certain date] together with such facts and questions of law as either party may request" are not reversible unless shown by the report to be erroneous.

Neither a notice, signed by the defendant in the suit above described in the name of the plaintiff while they were living together, placed upon a coal hoist used by a tenant of part of the property in suit and reading, "Each tenant is requested to prevent coal teams from being driven on the lawns or walks;" nor a receipt, made out by the defendant and at her request signed by one whom she was paying for work done around the house and stating that the payment was received from the plaintiff, constituted a memorandum in writing under R. L. c. 147, § 1, sufficient to establish that the defendant held the land subject to an express trust for the plaintiff's benefit.

The master who heard the suit above described concluded, from facts found by him, that the plaintiff had title to the two parcels of real estate in question taken in the name of the defendant for his benefit and for her benefit and for the benefit of both of them as a family, with no thought of future separation but with the idea that, in the event of his death, his wife would have the property without the necessity of proving a will or involving his estate in administration proceedings. *Held,* that a decree dismissing the bill was proper.

A denial of a motion by the plaintiff to recommit the report of the master in the suit above described was affirmed upon appeal, the motion being one addressed to the discretion of the court and there being nothing to indicate that such discretion was not wisely exercised.

BILL IN EQUITY, filed with a common law writ of summons and attachment dated April 30, 1918, seeking to compel the defendant to reconvey to the plaintiff two parcels of real estate alleged to have been purchased by the plaintiff with his own funds in 1906 and 1913, respectively, and placed in the name of the defendant, then the plaintiff's wife, and also certain Liberty bonds, an account in the Boston Five Cents Savings Bank and a co-operative bank account, which the plaintiff alleged he owned and placed in the name of the defendant "as a matter of convenience, she having, however, no real or beneficial interest therein." The plaintiff further alleged that on February 23, 1918, the defendant left his home without justifiable cause.

In the Superior Court, the suit was referred to a master. As to the marital relations of the plaintiff and the defendant, the master found that the plaintiff and the defendant were married on August 2, 1898. On or about February 23, 1918, the defendant left the home of the plaintiff and was living apart from him when this suit was begun. Previous to leaving the plaintiff, the defendant on February 21, 1918, had filed a libel for divorce on the grounds of adultery, upon which service was made on the plain-

tiff on February 23.  On July 8, 1918, a decree *nisi* was entered in favor of the libellant, the defendant in the present suit, which became absolute on January 9, 1919.

The master stated that the plaintiff testified, relative to the placing of the title of the two parcels of real estate in the defendant's name, that he stated to her in the presence of one Snow that while the title to the first parcel was to stand in the defendant's name, she had no interest in it, to which the defendant assented; and that he made a similar statement as to the second parcel in the presence of one Kramer and a Mr. Morse, his attorney.  As to this testimony, the master found as follows: "At the time of these transactions, the plaintiff, according to his own testimony, had been living happily and harmoniously with his wife.  Their happy relations continued for some years afterward, until 1918.  His testimony regarding the conversations is denied by his wife, and neither Snow, Kramer nor Morse were called to corroborate the plaintiff.  Without commenting further, it is enough to say that no reason existed for the plaintiff making any such statements in the presence of his wife and a third party, unless he wished to create evidence for himself at a time when he had no reason to expect litigation between himself and his wife, and when their relations were harmonious.  And if the plaintiff, distrusting his wife, had been advised that he could not testify to a private conversation with her and therefore advisedly spoke of the arrangements before a third party, it is reasonable to suppose that he would also have been advised that a written instrument is necessary to create a trust in land, and that arrangements would have been made to take such an instrument.  I do not believe that the plaintiff ever indicated to the defendant in any way that she was to have or had no interest in these parcels of real estate, and I so find."

The master found that the defendant placed upon a coal hoist or lift in one of the houses in question a notice written in her own handwriting, signed by her in the name of her husband, the plaintiff, and reading as follows: "Each tenant is requested to prevent coal teams from being driven on the lawns or walks.  W. F. Daniels;" and that, in paying one Perry for work done at another of the houses, the defendant made out in her own handwriting and took from Perry the following receipt:

"Dor. Oct. 6, 1917.

Received from Wm. F. Daniels
Three . . . . . . . . . . . . . . . . . . .Dollars
for cleaning trap in cellar at 576 Freeport Street
$3.00                                    J. Perry"

The plaintiff requested the master to rule that the foregoing two writings constituted sufficient instruments in writing to comply with the provisions of R. L. c. 147, § 1. He declined so to rule, but on the contrary ruled that neither of them created a trust in favor of the plaintiff under the requirements of that chapter.

The master also made detailed findings as to the conduct of the parties toward the property and concluded his report as follows:

"I find that the plaintiff and the defendant lived harmoniously and happily together until shortly before their separation in 1918, and that up to that time, there was never a distinct division line drawn by them or either of them, as to what was owned by either to the exclusion of the other. I find that the question of individual ownership, of 'mine and thine' was never raised until their domestic life was interrupted.

"I find that both the plaintiff and the defendant expressly recognized the right of the other party in the property and they regarded the real estate in question as 'their' property rather than the individual property of either.

"I find that the plaintiff, up to the time of separation, had not made a will, carried no life insurance at any time and had not provided for his wife in the event of his death, unless the placing of this real estate in his wife's name was such.

"I find that the plaintiff did most of the actual labor upon work contracted for by him after he went into business for himself; that at times he employed one man as a tender, and that in his judgment there was no necessity for him to carry insurance against liability on account of the risks of his business.

"I find that the plaintiff nowhere offered an explanation of his motive in taking title to the property in his wife's name, and he negatived the inference that it was done to protect himself by his testimony that he did business on a very small scale, and needed no protection by insurance.

"From the foregoing findings of facts, and the reasonable inferences to be drawn therefrom, I am satisfied that the plaintiff had the title to the two parcels of real estate in question taken in the name of the defendant for his benefit and for her benefit and for the benefit of both of them as a family, with no thought of future separation, but with the idea that in the event of his death, his wife would have the property without the necessity of probating a will, or involving his estate in administration proceedings and I so find."

The plaintiff filed objections to certain findings made by the master and requested him to report the evidence upon which the findings were made. The master annexed to his report a transcript of the evidence touching on the findings so specified.

The plaintiff filed exceptions to the master's report, based upon his objections, and also moved that the report be recommitted to the master for a report of certain evidence and certain further findings of fact. The motion and the plaintiff's exceptions were heard by *Sisk*, J. The motion was denied, the exceptions were overruled and the report was confirmed, and a final decree was entered dismissing the bill, the parties stipulating that the decree did "not in any way adjudicate the question of the rightful title or ownership of the Liberty bonds and the Boston Five Cents Savings Bank book, or the alleged conversion thereof." The plaintiff appealed.

*J. M. Russell*, for the plaintiff.

*N. B. Bidwell*, for the defendant.

RUGG, C. J. This is a suit in equity whereby the plaintiff, from whom the defendant, his former wife, has obtained a divorce for his wrong, seeks to compel conveyance to him of certain parcels of real estate. These parcels were conveyed to the defendant when she and the plaintiff were living together happily as husband and wife. The case was referred to a master under a rule which required him "to hear the parties and their evidence and report his findings to the court on or before [a certain date] together with such facts and questions of law as either party may request." This did not require a report of the evidence or any part of it. The duty of the master was performed when he reported such facts pertinent to the issues as he found and such as he was requested by either party to find with his rulings of law.

*Warfield* v. *Adams,* 215 Mass. 506. *Bradley* v. *Borden,* 223 Mass. 575, 586. *Mathews* v. *Colburn,* 215 Mass. 571. *Aronson* v. *Orlov,* 228 Mass. 1, 9. The master was sufficiently favorable to the plaintiff in the form of his report and the treatment of requests for findings and rulings. *Cook* v. *Scheffreen,* 215 Mass. 444.

There was no error of law in drawing an unfavorable inference against the plaintiff because he failed to call available witnesses to corroborate his version of conversations between himself and wife. *Howe* v. *Howe,* 199 Mass. 598. *Rioux* v. *Cronin,* 222 Mass. 131, 135. *Buckley* v. *Boston Elevated Railway,* 215 Mass. 50, 56. *McKim* v. *Foley,* 170 Mass. 426.

The master's findings of fact are not reversible unless shown by the report to be erroneous. *Greenhood* v. *Richardson,* 226 Mass. 208. *Jenanyan* v. *Fisher,* 229 Mass. 472.

The plaintiff can recover lands thus conveyed to a wife during coverture only when there is an enforceable trust. There was here plainly no express trust. There was no instrument in writing which could as matter of law be held a compliance with the statute of frauds. The receipts given by her fall far short of such instrument. It was said in *Pollock* v. *Pollock,* 223 Mass. 382, at page 384, "To establish a resulting trust the husband must prove that he furnished himself the entire consideration or a specific and definite part thereof, for which it was intended he should receive a determinate and fixed fraction of the whole estate conveyed. *Bailey* v. *Hemenway,* 147 Mass. 326. *Skehill* v. *Abbott,* 184 Mass. 145. In addition, the evidence must be clear that it was not intended at the time of conveyance that the wife should take a beneficial interest in the property by way of gift, settlement or advancement. *Cairns* v. *Colburn,* 104 Mass. 274. *Edgerly* v. *Edgerly,* 112 Mass. 175. *Patterson* v. *Patterson,* 197 Mass. 112."

The case at bar on its merits is within the authority of numerous decisions. *English* v. *English,* 229 Mass. 11. *Carr* v. *Frye,* 225 Mass. 531. *Keown* v. *Keown,* 230 Mass. 313. *Tileston* v. *Tileston,* 234 Mass. 530.

The motion to recommit the report to the master was addressed to the discretion of the court and there is nothing to indicate that it was not wisely exercised. *Smith* v. *Lloyd,* 224 Mass. 173, 175. *Baush Machine Tool Co.* v. *Hill,* 231 Mass. 30,

41. *Clark* v. *Young,* 231 Mass. 156. *Thompson* v. *Davis,* 225 Mass. 385. Without reviewing the record in detail, it is enough to say that the plaintiff fails to show any reversible error.

*Decree affirmed with costs.*