AMERICAN EMPLOYERS' INSURANCE COMPANY *vs.* LILLIAN WEBSTER & others.

Middlesex.    October 8, 9, 1947. — December 9, 1947.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Gift. Trust*, Express trust: what constitutes.

On conflicting testimony, it was not plainly wrong for the trial judge in a suit in equity to find that a gift of a substantial sum of money, rather than a mere transfer in trust for his own benefit, was made by an uncle to his niece, with whom he had lived for a number of years and on whom he had been dependent for part of that time in the absence of assistance from his wife and children.

BILL IN EQUITY, filed in the Superior Court on November 30, 1945.

The suit was heard by *Good*, J.

*H. R. Bygrave*, for the plaintiff.

*F. J. Garvey*, (*H. L. McLaughlin* with him,) for Fox, administrator, intervener.

*E. W. Hadley*, (*W. F. Costello* & *M. W. Cohen* with him,) for the defendant Rowe.

RONAN, J.   The defendant Lillian Webster on October 20, 1931, was appointed guardian of her husband, Ray F. Webster; but having failed to administer her trust in accordance with law, she was discharged as such guardian in 1943 and after a hearing upon her accounts she was charged with a sum in excess of $50,000.   The plaintiff was surety upon her bond as guardian and was ordered by the Probate Court to pay this sum to Ray F. Webster.   We assume, as did the parties, that no succeeding guardian was appointed. This amount was paid on January 10, 1945, by check of the plaintiff, payable to Webster and his attorney.   The attorney conferred with the defendant Mary I. Rowe, Webster's niece, and prepared an order authorizing him to pay to her "the proceeds of my settlement" with the surety. Webster signed this order.   The attorney retained $20,000 and paid the balance to Miss Rowe in two checks, one for $500, the proceeds of which she gave to Webster, and the other for $29,500 which she deposited in her name in a Boston bank.   Webster died intestate on October 6, 1945, leaving his wife and two children.   When the wife obtained the bond from the plaintiff, she agreed to reimburse it on account of any loss that it might sustain by reason of becoming surety.   The plaintiff brought the present bill to reach and apply the interest of the widow in the estate of Webster, contending that the balance in the bank account which originated in the deposit of $29,500 was held in trust by Miss Rowe for the benefit of Webster and became an asset of his estate.   The defendant Rowe claims the money of this deposit as her own individual property, as a gift from Webster.   The judge found that Webster had made an actual and outright gift of the $30,000 to this defend-

ant.   The plaintiff and the intervener, the administrator of Webster's estate, appealed from a final decree establishing the indebtedness of the widow and dismissing the bill as to the other defendants.

We have examined the evidence, which has been reported, and it is our duty to decide the case according to our own judgment, giving due consideration to the findings of the trial judge which are not to be reversed unless they are plainly wrong.   *Trade Mutual Liability Ins. Co.* v. *Peters,* 291 Mass. 79, 84.   *Barnum* v. *Fay,* 320 Mass. 177, 180. *Allen* v. *Moushegian,* 320 Mass. 746, 752.   Whether Miss Rowe received the money as a gift or as a trustee for the benefit of her uncle was a question of fact, *Briggs* v. *Leonard,* 261 Mass. 381, which was to be determined upon conflicting oral evidence, given entirely by interested witnesses.   *Howe* v. *Ripka,* 199 Mass. 359, 360–361.   *Harding* v. *Studley,* 294 Mass. 193, 194–196.   The capacity of a witness to induce a belief upon the part of the trial judge in the truth of his testimony may depend to a considerable extent upon the appearance of the witness and his manner of testifying. Intelligent scrutiny of a witness while testifying aids a judge in deciding what credence should be attributed to his spoken words.   *Tuells* v. *Flint,* 283 Mass. 106, 109.   *Boston* v. *Santosuosso,* 307 Mass. 302, 343.   The judge who saw and heard the witnesses has in this respect an advantage over us, who must depend upon the printed record.   The question we have to decide is not what opinion we might come to on the printed record alone but whether it can be properly said that the findings of the judge who saw and heard the testimony are plainly wrong.   *Berman* v. *Coakley,* 257 Mass. 159, 162.   *Buckley* v. *Buckley,* 301 Mass. 530.

The evidence need not be narrated in any detail.   It is enough to say that it disclosed that Webster since 1933 had lived with his mother, with whom his niece, Miss Rowe, resided, and that he continued to live with them after Miss Rowe had taken over the household until he died in 1945; that Webster had been a druggist owning five stores, but had used liquor to excess and had become unable to manage his property, and was unemployed for considerable

periods of time; that when he was able he paid for his board and room, but for a number of years, notably from 1937 to 1941, he contributed nothing and was dependent upon Miss Rowe; that his wife and children had not assisted him; and that in appreciation for her care and kindness to him he had given the money to Miss Rowe. On the other hand, there was evidence, from alleged conversations between Miss Rowe and Webster's children and his son-in-law, from Miss Rowe's manner of withdrawing money from the account amounting to over $4,000 at the request of Webster and for his benefit and that of his daughter-in-law, and from her failure to withdraw any money after the death of Webster, which indicated that she held the money for the benefit of Webster. *Murphy* v. *Smith*, 291 Mass. 93. *Greeley* v. *Flynn*, 310 Mass. 23. Of course, the judge was not in error in refusing to believe these alleged conversations with those who were interested in proving that the money was held in trust. He could have found that the withdrawals for Webster's use were prompted by the kindness of Miss Rowe rather than by any duty she owed him, and that the discontinuance of the withdrawals upon his death resulted from the circumstances which occurred shortly thereafter and which indicated that there would be litigation over the ownership of the money. She could have withdrawn all the money after the death of Webster; but if she did so and attempted to conceal it, it would be argued that this was an admission that she did not own these funds. If she allowed the account to remain intact, it would be argued that she recognized that the death of Webster terminated her authority to manage the account. Upon his death she left the account intact and awaited the outcome of the dispute over its ownership. The judge might have considered significant the omission of the attorney for the plaintiff, who had been Webster's attorney and had arranged for the transferring of the funds into Miss Rowe's account, to substantiate by testimony the various implications contained in numerous questions put by him to Miss Rowe, whom he called as a witness and subjected to a lengthy cross-examination concerning the arrangements

and conversations between him and her which culminated in the payment of the money to her, all of which she in the main categorically denied. The judge could also consider the failure of Webster's son, who was a witness, to deny certain unfriendly conduct toward his father alleged to have occurred while his father was living at the home of Miss Rowe. *Kelley* v. *Boston,* 201 Mass. 86, 89. *Daniels* v. *Daniels,* 240 Mass. 380, 385. *Wilson* v. *Grace,* 273 Mass. 146, 152. *Murphy* v. *Moore,* 307 Mass. 163, 164, 165.

The judge was to determine from this mass of conflicting evidence where the truth lay. The burden of proving that the money was held in trust was upon the plaintiff. We cannot say that the judge was plainly wrong in accepting as true the testimony of Miss Rowe, as he apparently did, and, having done so, in reaching the conclusion that her uncle had made her a gift of the money. *Tileston* v. *Tileston,* 234 Mass. 530. *Briggs* v. *Leonard,* 261 Mass. 381. *Robinson* v. *Pero,* 272 Mass. 482. *Fall River National Bank* v. *Estes,* 279 Mass. 380. *Ryder* v. *Donovan,* 282 Mass. 551. *Cornell* v. *Noonan,* 286 Mass. 137. *Murphy* v. *Donovan,* 295 Mass. 311. *Busteed* v. *Cambridge Savings Bank,* 306 Mass. 9. *Morson* v. *Second National Bank,* 306 Mass. 588. *Russell* v. *Myers,* 316 Mass. 669. *Kittredge* v. *Manning,* 317 Mass. 689.

*Decree affirmed with costs.*