COMMONWEALTH *vs.* CHARLES M. BALLOU & others.

Franklin. May 11, 1933. — June 26, 1933.

Present: RUGG, C.J., PIERCE, WAIT, FIELD, & LUMMUS, JJ.

*Municipal Corporations*, Officers and agents. *Elections*, Corrupt conduct. *Jurisdiction*. *Pleading, Criminal*, Indictment. *Domicil*. *Practice, Criminal*, Requests, rulings and instructions, Exceptions. *Evidence*, Of intent, Relevancy.

An indictment, charging that members of the board of registrars of voters of a town "were guilty of fraud and corrupt conduct in the execution of the duties of their officers, [*sic*] in that they did for political reasons cause the name of . . . [a certain man] to be removed from the list of legal voters in the Town . . . well knowing that said . . . [man] was then a legal voter in said Town," formally set forth one of the crimes described in G. L. (Ter. Ed.) c. 56, § 3.

Conduct of the members of the board of registrars of voters of a town in wrongfully striking from the list of voters of the town the name of one legally qualified to vote therein is such an act as is embraced by the phrase, "corrupt conduct," in G. L. (Ter. Ed.) c. 56, § 3.

In the indictment above described, the words "list of legal voters in the Town" were sufficiently definite to charge the defendants with striking a name from the official registry of voters.

At the trial of the indictment above described, one issue was whether the man, whose name was alleged to have been removed in 1932 from the list of legal voters of the town, was a legal voter therein. There was evidence that the town was his domicil of origin; that he voted therein through 1931; that beginning in 1923 he and his family had lived in another town almost nine months of each year, but had kept his house and farm in operation in the first town and had lived there during the remainder of the year; that he held several offices in the first town between 1923 and 1931 and in 1931 ran unchallenged for the office of selectman thereof; and that there had been no change in his action concerning his residence between 1923 and 1931. *Held*, that in the circumstances, the man's living in the second town did not require as a matter of law a finding that his domicil of origin in the first town had been lost: the question was one of fact.

At the trial above described, there was evidence that the man whose name had been removed from the voting list and the defendants had had political differences and were political opponents and that the defendants as members of the board of assessors in bad faith saw to it that he was not assessed a poll tax on April 1, 1931, and then used the fact of such nonassessment as a cloak to cover the removal of his name from the voting list in 1932 for their own selfish ends. *Held*, that, if the jury so found, each defendant was guilty of "corrupt conduct in the execution of the duties of his office."

An exception by the defendants at the trial above described to a refusal by the trial judge to instruct that, if the defendants in their conduct had acted under advice of counsel, the jury should find the defendants not guilty, was overruled, the judge having charged the jury in substance that the fact that the defendants consulted counsel would have a bearing on their good faith, but that they must show that they made to those whose advice they sought a full and frank disclosure of all the knowledge they had touching the matter; that if, after a full disclosure of the facts, they acted upon the advice of persons who, they had reason to believe, were skilled in such matters, that might derogate to a considerable extent from the fact that they acted corruptly; and that if they acted under an honest mistake of the law they were not guilty.

Evidence at the trial above described of a difference of opinion as to town affairs between the man whose name was removed from the voting list and one of the defendants was admissible, it being material and competent to show the political hostility between the two men and to provide a motive for the subsequent acts of the defendants.

At the trial above described, it was proper to exclude evidence as to whether the man whose name was removed from the voting list of

the defendants' town paid for the tuition of his minor daughter in high school at the town where he resided for nine months of the year, and also a question asked of the clerk of the defendants' town, not a defendant but a member of the board of registrars of voters, as to why he removed the name from the voting list.

INDICTMENT, found and returned on March 21, 1932, and described in the opinion.

In the Superior Court, the indictment was tried before *Butterworth*, J., a judge of a district court sitting in the Superior Court under statutory authority. Material evidence and rulings by the judge are described in the opinion. The defendants were found guilty and alleged exceptions.

Section 3 of G. L. (Ter. Ed.) c. 56 reads as follows:

"A registrar or assistant registrar who refuses or wilfully neglects to require, under section forty-four of chapter fifty-one, an applicant for registration to read the five lines from the Constitution of the Commonwealth in such manner as to show that he is neither prompted nor reciting from memory, or to write his name in the register, unless he is prevented by physical disability from so doing, or unless he had the right to vote on May first, eighteen hundred and fifty-seven, or distinctly to announce the name of an applicant for registration before entering his name upon the register, or who knowingly prevents or seeks to prevent the registration of any legal voter, or who knowingly registers the name of any person not qualified to vote, or who is guilty of any fraud or corrupt conduct in the execution of the duties of his office, shall be punished by imprisonment for not more than six months."

*H. Parker*, (*F. J. Lawler* with him,) for the defendants.

*J. T. Bartlett*, District Attorney, for the Commonwealth.

PIERCE, J. The defendants were arraigned upon an indictment charging "That Charles M. Ballou, Charles H. Jennison and Lewis B. Bowen, All of Wendell in the County of Franklin, aforesaid, on the twentieth day of February now last past at Wendell aforesaid, in the County aforesaid being then and there the duly qualified members of the Board of Registrars of Voters for the Town of Wendell aforesaid, were guilty of fraud and corrupt conduct in the

execution of the duties of their officers [*sic*], in that they did for political reasons cause the name of one Ozro D. Baker to be removed from the list of legal voters in the Town of Wendell, well knowing that said Ozro D. Baker was then a legal voter in said Town of Wendell"; and further charging in "Count 2" of said indictment, after identical allegations with those of the preceding count, that the defendants "were guilty of fraud and corrupt conduct in the execution of the duties of their offices, in that they did for political reasons cause the name of one Gertrude F. Baker to be removed from the list of legal voters in the Town of Wendell, well knowing that said Gertrude F. Baker was then a legal voter in said town of Wendell"; the said indictment further charged in "Count 3," after allegations identical with those of the preceding counts, that the defendants "were guilty of fraud and corrupt conduct in the execution of the duties of their offices, in that they did for political reasons cause the name of one Dorothy M. Baker to be removed from the list of legal voters in the Town of Wendell, well knowing that said Dorothy M. Baker was then a legal voter in said Town of Wendell." The defendants were arraigned on the indictment March 23, 1932, and pleaded "not guilty."

March 28, 1932, the defendants filed and the judge allowed the motion for specifications which follows: "Now come the defendants . . . and pray that the Commonwealth specify the fraud and corrupt conduct in the execution of their duties as members of the board of registrars of voters, as alleged in the three counts of said indictment." Specifications were filed on March 30, 1932, the material part of said specifications being as follows: "Now comes the Commonwealth . . . and says that the three persons whose names were removed from the voting list as alleged in the three counts of the indictment were members of a political faction in the town of Wendell which was opposed to the defendants politically, and the removal of the names of said persons from the voting list was done for the purpose of strengthening the defendants' political position."

On April 4, 1932, trial of the indictment proceeded before the Superior Court and a jury. On April 6, 1932, at the close of the evidence for the Commonwealth, the defendants filed a motion for a directed verdict of not guilty on the ground "that there is no crime shown by virtue of the Commonwealth's own evidence." The motion was denied, the defendants excepted and the trial proceeded. On April 8, 1932, the motion for a directed verdict was withdrawn by leave of court. At the close of all the evidence the defendants filed a motion "that the indictment and each count thereof be dismissed for lack of jurisdiction, inasmuch as the indictment sets forth no cause in any of its counts under the laws of the Commonwealth of Massachusetts, inasmuch as the word 'political' as used in said indictment and specifications does not in any manner of its use allege any fraud or corrupt conduct." The defendants duly excepted to the denial of this motion and also to the denial of a motion that a verdict be directed for all defendants on all counts of the indictment.

The defendants duly filed requests for rulings and for instructions to the jury which are marked "H," and attached to the bill of exceptions but not printed by the clerk of the Superior Court. The judge refused to give the instructions asked by the defendants as set forth in request numbered 3, and the defendants duly excepted. This request reads: "If the jury find that in removing the names of Ozro D. Baker, Gertrude F. Baker and Dorothy M. Baker by the defendants from the voters of the Town of Wendell the defendants acted under the advice of counsel, then they shall find the defendants not guilty on all counts charged in the indictment." The judge refused to give instructions asked by the defendants as set forth in requests numbered 12 and 16 and the defendants duly excepted. At the hearing before the full court these exceptions were waived, as were all exceptions saved to the admission or exclusion of evidence, other than those argued upon the defendants' brief. No exceptions were taken by the defendants to the charge. The jury found each defendant guilty on each of the three counts in the indictment. The

case is before this court on the several and joint bills of exceptions of the defendants. All evidence material to the issues presented is set forth in the bill of exceptions, together with a recital of the rulings of the judge excluding or admitting such evidence, and a like recital of exceptions as taken by the defendants to such rulings.

1. By virtue of G. L. (Ter. Ed.) c. 51, § 16, the board of selectmen and the town clerk of Wendell act as the board of registrars. The defendant Charles M. Ballou had at the time of the trial been a member of the board of selectmen twenty-eight years, and he had been chairman of that board for twenty-five years. The defendant Charles H. Jennison had been a member of the board of selectmen in 1925, 1926, 1927, 1931 and 1932, and for the same years a member of the board of registrars by virtue of his office. The defendant Lewis B. Bowen had been a member in 1930 and 1931 up to the annual town meeting in March, 1932.

The evidence for the Commonwealth which was in the main undisputed tended to prove the following facts: Ozro D. Baker was born in Wendell and had lived there all his life. He owned the farm on which were the original farm house, two barns, workshop, and a house occupied by a caretaker, carried on the farm, raised garden stuff, potatoes, and fruit, and he had pasture land and live stock. He had always voted in Wendell up to March 7, 1932, and had never missed an election until that date. He had held public office there and paid taxes there. On February 8, 1932, he received a notice from the board of registrars of voters stating that his name had not been entered in the annual register of voters for that year, and on February 10, 1932, he received another notice requesting him to appear at a meeting of the registrars on February 20, 1932, to show cause why his name should not be struck from the voting list. His wife and daughter received on the same dates notices similar to the ones received by him. They all appeared on February 20, 1932, at the time and place stated in the notices for the hearing, and there read prepared statements why they thought their names should not

be removed from the voting list.   Some time after this meeting the Bakers received notices that the registrars had voted to remove their names from the voting list.   On town meeting day, 1932, the registrars gave the Bakers another hearing at Baker's request, but denied the privilege of voting to any one of them.

It further appeared by uncontradicted testimony that Ozro D. Baker had held the offices of selectman, overseer of public welfare, assessor and member of the school committee of Wendell in 1927, 1928 and 1929, and member of the school committee until March, 1931.   During the years that had passed he had served on various town boards with the defendant Ballou and everything was satisfactory between them until 1928 when certain acts of Ballou aroused Baker's "dissatisfaction," and from then on Baker and Ballou were on opposite sides of several questions concerning the town.   At the town meeting in 1931 the voters were split into two factions, one led by Baker and one by Ballou.   At this meeting Baker was one of six candidates for selectman.   The three defendants were elected.

There was further uncontradicted testimony that in 1922 Ozro D. Baker bought a dwelling house in Millers Falls, in the town of Montague, and since 1923 he and his family had lived there from some time in September until some time in June of every year, and in Wendell for the rest of the time.   The Baker children had attended school in Turners Falls and Baker had a wood business in Millers Falls.   His house in Millers Falls, as also his house in Wendell, was fully furnished, a caretaker lived on the Wendell farm the year round and live stock was kept there.   So far as the evidence shows and so far as the defendant Ballou knew the actions of the Bakers with regard to the time spent in Wendell and Millers Falls were no different in 1931 than they had been in any other year since 1923.

The defendant Ballou testified that the only difference between the situation of the Bakers in 1931 and in other years was that "Mr. Baker wasn't assessed a poll tax there in 1931."   Ballou and Bowen were members of the board of

assessors in 1930 and 1931. Following the defeat of Baker and the election of Bowen to the office of selectman of Wendell at the town election in 1931, Ballou, in May, 1931, discussed the matter of the poll tax with the tax commissioner of the Commonwealth, but this "was really in connection with Baker's right to vote in Wendell." Ballou also sought the advice of the town counsel, and on April 1 personally went to the Baker residence in Wendell "at six in the evening and stayed until nine in the evening." He then went to the Baker residence in Millers Falls, looked through the window and saw Baker come out and go toward the barn. He saw no one at the farm in Wendell, and he testified that "It was as a result of my visit to his house that he was not assessed a poll tax." In July, 1931, Ballou, Bowen and the town counsel of Wendell went before the board of assessors of Montague and told them that "They were not going to assess him [Baker] for a poll tax in the town of Wendell," and Ballou said "he felt he [Baker] should be taxed in the town of Montague." Each of the three defendants in the indictment testified that the fact that Baker had not been assessed a poll tax in Wendell was a factor in his decision not to allow him to vote.

It appeared in evidence that the town of Montague did assess a poll tax upon Baker in 1931, but this tax was later abated upon Baker's petition and the presentation by him of evidence concerning his domicil. Certificates showing the abatements were presented to the registrars of Wendell at the hearing of February 20, 1932. After the hearing of February 20, 1932, Ozro D. Baker received a notice from the town which follows: "At a meeting held at the Town Hall in Wendell, on Saturday, February 20, 1932, after notice was given to Ozro D. Baker to appear and show cause why his name should not be removed from the voting list, said Ozro D. Baker having appeared in answer to said notice, and not having given evidence or any legal reasons why his name should not be removed from the list, the Registrars, after having given the matter due consideration, voted to remove your name from the voting list of the

Town of Wendell, and in accordance therewith your name has been removed from the voting list. Elias Richardson, Secretary, Board of Registrars." Gertrude F. Baker and Dorothy M. Baker received a similar notice.

The defendants' motion to dismiss the indictment for lack of jurisdiction was rightly denied. The indictment set forth a crime known to the law, to wit, fraud and corruption in office. Each count of the indictment is phrased in the language of G. L. (Ter. Ed.) c. 56, § 3. This form of criminal pleading commonly is sufficient. *Commonwealth* v. *Pentz*, 247 Mass. 500, 505. *Commonwealth* v. *Reilly*, 248 Mass. 1, 3. The defendants contend that the phrase "in that they did for political reasons cause the name of one Ozro D. Baker to be removed from the list of legal voters in the Town of Wendell" cannot be distorted into a charge of an unlawful or criminal nature. If this contention means that the phraseology of the indictment was insufficient to give the defendants and the court reasonable knowledge of the nature and grounds of the offence charged, the deficiency was cured by the specifications filed by the Commonwealth. *Commonwealth* v. *Donoghue*, 266 Mass. 391, 397. *Commonwealth* v. *Snyder*, 282 Mass. 401. G. L. (Ter. Ed.) c. 277, § 40. The statute under which the indictment was drawn, G. L. (Ter. Ed.) c. 56, § 3, does not set forth that the wrongful striking off of the voting list of the name of a legally qualified voter is a crime, but such denomination is consistent with the conduct therein specifically called criminal, and it seems clear that the wrongful striking off the voting list of the name of a legally qualified voter is such an act as is embraced by the phrase "corrupt conduct." It likewise seems clear that the phrase "list of legal voters in the Town of Wendell" is sufficiently definite to charge the defendants with striking a name from the official registry of voters. See G. L. (Ter. Ed.) c. 277, § 34.

The motion of the defendants for a directed verdict of not guilty was properly denied. Two questions appear to be involved, (1) Was there evidence upon which the jury could have found that the Bakers were legally entitled to vote in the town of Wendell? and (2) Was there evidence

from which the jury rightly could have found that the defendants were influenced by personal considerations, that is, by corrupt motives? As to the first question the evidence was ample that Baker was born in Wendell and that he and his family lived there almost continuously until 1923. Since 1923 the Bakers have lived in Montague almost nine months of the year, but have kept the house and farm in Wendell fully equipped and ready to occupy, and many times during the periods they may have been living in Montague they have spent the day at the farm. Mr. Baker held office in Wendell several times after 1923, and in 1931 ran unchallenged for the office of selectman. There has been no change in the action of the Bakers concerning their residence in Wendell since 1923. They have always claimed Wendell as their domicil. It is plain on the undisputed facts that the Bakers' domicil of origin was in Wendell. It was a question of fact whether that domicil was lost and a new domicil acquired in Montague. A man retains his domicil of origin until he voluntarily surrenders it and acquires another, and the residence of the Bakers such as it was in Montague since 1923 was not, as matter of law, a change of domicil from Wendell to Montague. *Thayer* v. *Boston,* 124 Mass. 132, 144, 145. *Olivieri* v. *Atkinson,* 168 Mass. 28, 29. *Tuells* v. *Flint, ante,* 106, 109–110, and cases cited.

2. There was evidence from which the jury warrantably could have found that the defendants removed the names of the Bakers from the voting list in order to strengthen their own political positions, that Baker and the defendants were political opponents for town offices in the year 1931, and that Baker had had trouble with Ballou when they were on the board of selectmen together. There was much other evidence which would warrant a jury in finding that Ballou and Bowen, as members of the board of assessors, in bad faith saw to it that Baker was not assessed on April 1, 1931, and that the defendants then used the fact of Baker's nonassessment as a cloak to cover the removal of the Baker names from the voting list for their own selfish ends. If the jury should so find it is manifest that

each defendant was guilty of "corrupt conduct in the execution of the duties of his office."

3. The defendants excepted to the refusal of the trial judge to give their requests for ruling numbered 3, which was in the form following: "3. If the jury find that in removing the names of Ozro D. Baker, Gertrude F. Baker and Dorothy M. Baker by the defendants from the voters of the town of Wendell the defendants acted under advice of counsel, then they shall find the defendants not guilty on all counts charged in the indictment." The instructions given were briefly, that the fact that the defendants consulted counsel would have a bearing on their good faith, but they must show that they made a full and frank disclosure to those whose advice they sought of all the knowledge they had touching the matter; that if, after a full disclosure of the facts, they acted upon the advice of persons who, they had reason to believe, were skilled in such matters, that might derogate to a considerable extent from the fact they acted corruptly; and that if they acted under an honest mistake of the law they were not guilty. These instructions were adequate and in accord with what was said in *Commonwealth* v. *Bradford*, 9 Met. 268, 272.

4. The defendants excepted to certain testimony of Ozro D. Baker "on ground of its irrelevancy," concerning the difference of opinions of Baker and the defendant Ballou on various matters of town policy. The evidence was material and competent to show the political hostility between the two men, and to provide a motive for the subsequent acts of the defendants. In substance the same evidence was later given by another witness, Putnam, without objection. The defendants excepted to the exclusion of their question whether Ozro D. Baker paid for the tuition of his minor daughter in high school at Turners Falls in the town of Montague, contending that the statement of counsel for the defendants was equivalent to an offer of proof by the defendants that if Ozro D. Baker was in fact a resident of the town of Wendell he would have been required to pay tuition in the high school in the town of Montague, and citing in support of this contention, G. L. (Ter. Ed.) c. 71,

§ 6; c. 76, §§ 5, 6, 12. There is nothing in the statutes above cited which requires that tuition be paid for schooling in some other town than the town of domicil. The question was one between the town of Montague and Baker, and could have no bearing on the issue whether the actual and legal domicil of Baker was in Wendell or in Montague. There was no offer of evidence to prove that Baker ever paid or was ever asked to pay tuition in Montague for his daughter, and consequently the jury could not draw any inference from the mere fact that the daughter of Baker attended high school in Montague. The defendants excepted to the exclusion of the defendants' inquiry in cross-examination of the town clerk and a member of the board of registrars, "Now why did you vote to remove the names of Ozro D. Baker, his wife and daughter from the list?" The witness was not a defendant and his personal reasons for voting as he did were not material. All the other exceptions taken by the defendants were waived at the argument before the full court.

The result is that as against each defendant the entry must be

*Exceptions overruled.*