FLORÉNCE L. WHITE, administratrix *de bonis non, vs.*
ARTHUR W. LOFTUS.

SAME *vs.* JOSEPH F. LOFTUS.

Suffolk.    March 4, 1931. — June 1, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Practice, Civil,* Requests, rulings and instructions, Exceptions, Rules of
    court.  *Domicil.*

At the trial of an action by an administrator *de bonis non* to recover the
    amount of an overpayment to a next of kin of the intestate, it ap-
    peared that the payment had been made by the plaintiff's predecessor
    as a distribution under the laws of the State of California, and the
    plaintiff contended that distribution should have been made under
    the laws of this Commonwealth, which would have entitled the de-
    fendant to a less sum.  It appeared that the intestate's husband, a
    practising physician domiciled here, had taken her to California be-
    cause she was suffering from cancer, and the evidence as to whether
    he intended that the sojourn there should be either permanent or for
    an indefinite period was conflicting.  The bill of exceptions stated as
    an agreed fact that the husband and wife had the same domicil.  The
    judge ruled "that the question of domicil was a question of fact for
    the jury."  The jury found for the plaintiff.  *Held,* that
        (1) No exceptions lay to a refusal of requests for rulings in sub-
    stance that as a matter of law there should be a verdict for the defend-
    ant; such contention should have been embodied in a motion under
    Common Law Rule 44 of the Superior Court (1923);
        (2) In the circumstances, the defendant was not prejudiced by an
    error of the judge in refusing to instruct the jury, "The domicil of
    the wife follows that of her husband";
        (3) It was proper to refuse a request for a ruling based upon a
    recital of only a part of the evidence material to the question thereby
    raised;
        (4) The issue properly was presented to the jury.

TWO ACTIONS OF CONTRACT.  Writs in the Municipal
Court of the City of Boston dated February 17, 1930.

On removal to the Superior Court, the actions were tried
together before *Beaudreau,* J.  Material evidence and rul-
ings by the trial judge are stated in the opinion.  There
were verdicts for the plaintiff in each action on the third

count of the declarations in the sum of $1,553.36. The defendants alleged exceptions.

*J. F. Bassity*, for the defendants.

*F. J. Murray*, (*W. A. Murray* with him,) for the plaintiff.

PIERCE, J. Saving the names of the defendants, these two actions of contract and the two bills of exceptions are in every respect identical. The actions were tried together to a jury, and the bills of exceptions of the defendants should have been consolidated. The defendants at the trial conceded that the second count covered the same matters, facts and things as they were set out in narrative form in the first count, and, by agreement, in each action the judge directed a verdict for the plaintiff on the first count.

In each action the third count alleges, in substance, that in the distribution of the assets of the estate of Gertrude Loftus Mayers, a distributive share of one fourth of said assets was made to the defendant and that said distribution was made on the basis of the laws of distribution of the State of California, whereas the laws of the State of California did not apply because the decedent was domiciled in the Commonwealth of Massachusetts at the time of her death, and that the distribution should have been made under the laws of this Commonwealth. The third count further alleged, in substance, that as the result of said improper distribution the defendant therein was paid the sum of $1,250 in excess of his lawful share. The plaintiff seeks to recover for this sum in the third and fourth counts of her declaration.

At the trial there was evidence tending to prove that one John E. Mayers was a physician engaged in practice for many years in South Boston; that in 1906 he bought a house in which he lived and practised; that in 1907 he married the intestate and thereafter the title to this home was carried in the name of his wife; that shortly after the Great War the intestate and her husband travelled in California for several months; that late in 1920 Dr. Mayers told his sister, the plaintiff in these actions, that his wife

was suffering from what he believed to be a cancer; that she was not aware of her condition; that he was taking her to California in the hope that the climate would relieve her and that as soon as her condition would permit he would return to Boston. The evidence introduced further showed that Dr. Mayers and the intestate left for California in January, 1921, and located in Santa Monica, living in hotels and furnished apartments until Mrs. Mayers entered a hospital in Santa Monica. ·She died in April, 1924, and her body was brought to Boston and interred in the family lot. Before leaving for California, in January, 1921, Dr. Mayers turned over to the plaintiff the care of his South Boston real estate, with instructions to rent the same and account to him for the rent and upkeep until his return. The plaintiff did so until the death of the intestate and of Dr. Mayers. Correspondence passed between the plaintiff and Dr. Mayers during this time wherein Dr. Mayers referred to his desire to come back to Boston and his intention to do so as soon as conditions would warrant. At the time of the burial of the intestate he stated that he was returning to Santa Monica to conclude his affairs there and as soon as he could he would return to Boston and resume his practice.

The intestate and Dr. Mayers before leaving for Santa Monica, in January, 1921, stored their piano and other household furnishings in Chelsea, where they remained until the death of the intestate and Dr. Mayers. The family silver was deposited in the vaults of a trust company and was not removed during their lifetime. When the intestate went to Santa Monica she had accounts in five savings banks, four in Boston and one in Chelsea, and also a checking account in a trust company in Boston, and these several accounts remained active until her death. For eighteen years or more she had a safe deposit box in a vault on State Street which she retained until her death, and the contents of said box representing her entire estate of substantially $30,000, consisting of gold coin, bonds, securities and pass books in the savings banks of Boston and Chelsea, were

removed by her administrator. In applying for his appointment as administrator in the Suffolk Probate Court John E. Mayers described the intestate as dwelling last in Santa Monica, California. There was also evidence that Dr. Mayers before leaving for California had said that he intended to apply for permission to practise there; that he had been registered in California and engaged in the practice of his profession there, and that he had said in respect to his practice "that conditions in California were better than in Boston, fees were higher, and there was very little night work." It was further in evidence that Dr. Mayers had made a statement to the commissioner of taxes to the effect that in 1922 he was domiciled in Santa Monica, and there was also evidence that he had signed this statement as to his domicil at the request of his wife, the intestate, "for the purpose of saving the income tax."

Upon the above evidence the defendant in each action asked the judge to give certain instructions, which were practically identical. This the judge refused to do and each defendant saved his exceptions thereto. The judge, instead of giving the instructions to the jury requested by each defendant, instructed them "that the question of domicil was a question of fact for the jury," and the defendants duly excepted. Otherwise no exception was taken to the charge.

Requests in each case numbered 1, 2, and 3 are not argued and are treated as waived. Request 4, "The jury must find for the defendant . . . upon the third and fourth counts of the plaintiff's declaration," and request 5, "The domicil of John E. Mayers was in Santa Monica, California, on April 22, 1924," were manifestly not requests for instructions but were in effect requests for rulings of law that verdicts should be directed for the defendants. Such a direction may be requested only upon motion. The requests for instructions to this end were refused rightly. *Patton* v. *DeViney*, 259 Mass. 100, 102. Request 8 was: "The domicil of the wife follows that of her husband." Applied to the admitted fact that during their married lives Dr. Mayers and his wife had continuously lived

together as husband and wife, the request was germane to the issue before the jury and should have been given at least in substance. It being stated in the exceptions as an agreed fact that the husband and wife had the same domicil, we think the error of not dealing specifically with the principle involved in the request was not prejudicial to either defendant. Request 6, "The estate of Gertrude Loftus Mayers was properly distributed under the laws of the State of California, and under said laws the husband of the said Gertrude Loftus Mayers was entitled to one half of the said estate, and the heirs at law of the said Gertrude Loftus Mayers were entitled to remaining half," presented no issue of fact for the determination of the jury. Request 7, "To constitute a change of domicil, it is merely necessary for the person changing his domicil to remove to a new place with the intention of living in such new place (a) for an indefinite period, or (b) permanently," was in substance given in the charge. Request 9 was: "The undisputed evidence that Dr. Mayers lived in California for a period of more than five years, returned twice to California after visits to Boston, declared in a written statement to the Massachusetts tax authorities that his domicil was in California, declared over his own signature in his petition for administration of his wife's estate that both he and she were residents of California, and took examination required by law to practise medicine in California and actually did practise medicine in California, constitute, as a matter of law, an actual adoption by him of California as the place of his domicil." If this request did not amount to an instruction that verdicts should be directed for the defendants, and so be obnoxious to Common Law Rule 44 of the Superior Court (1923), it was denied rightly, because the statement did not contain all the facts warranted by the evidence, *supra*, and disregarded the right of the jury to draw inferences and to disbelieve the testimony of all witnesses. Assuming the facts stated were found to be true, there remained the question whether John E. Mayers intended to make his home in California or intended to remain there only until the health of his wife was restored

and then return to his home in Boston. In this respect the intention of John E. Mayers was a question of fact for the jury. *Sears* v. *Boston,* 1 Met. 250. *White* v. *Stowell,* 229 Mass. 594. *De Meli* v. *De Meli,* 120 N. Y. 485.

*Exceptions overruled.*