EDWARD TUELLS vs. GRACE L. FLINT.

Essex.    October 7, 25, 1932. — May 24, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Conservator.   Probate Court*, Appeal, Parties.   *Domicil.   Jurisdiction.*
*Constitutional Law*, Full faith and credit.

Where, upon a petition in a probate court for the appointment of a con-
servator of the property of a person of advanced age and mental
weakness, a general appearance was entered in behalf of the respond-
ent, the court acquired jurisdiction over the respondent.

Pending the determination by this court of an appeal, by the respondent
in a petition for the appointment of a conservator, from a final decree
making such appointment, the conservator died.   He had not been
a party to the appeal.   *Held*, that such death constituted no reason
why the issues raised by the appeal should not be decided.

Statement by RUGG, C.J., of principles governing determination of
domicil.

At the hearing in the Probate Court for the county of Essex of a petition
for appointment of a conservator of the property of a childless widow
sixty years of age, the respondent contended that her domicil was in
Maine.   There was evidence, largely undisputed, that she had her
domicil with her husband in Salem for many years and continued to live
there after his death for three years; that she lived for the next five
years in a hotel in Boston; that then she lived with friends in Salem for
a few months, after which she went to the home of her aunt in Maine,
where she was when the petition was filed some fourteen months
later; that she moved no furniture to Maine; that she continued to
own her homestead in Salem, keeping it in repair and fully furnished
as when she had lived in it; that some of her clothing remained in it;
that when the suggestion was made to her that she rent or sell it, she
refused to do so, saying that she might go back to it some time; that
she said many times that she ought never to have left it; that it was
frequently visited by her attorney or agent; that management of her
property both real and personal was largely in the hands of an attorney
in Salem who had settled her husband's estate; that her checking
account was in a Salem bank and the regular bank statements were
sent to her; and that she paid an income tax in Massachusetts.   There
was other evidence as to facts and circumstances bearing upon her
attitude of mind concerning her sojourn with her aunt which was
repugnant to the idea that she had acquired a domicil in Maine.   The
judge found her domicil to be in Salem.   *Held*, that the finding could
not be pronounced plainly wrong, and was warranted.

On March 3, the day following the filing in the Probate Court for the
county of Essex of the petition above described, there was filed a

petition in the Probate Court for York County, Maine, for the appointment of a guardian of the respondent. A hearing thereon was held, concluding on March 19. Such hearing was *ex parte*, with only those relatives having an interest in establishing the domicil in Maine being given an opportunity to be heard and to present evidence. A decree was entered there on March 21, reciting that one who had been appointed special conservator in this Commonwealth and certain cousins of the respondent, including the present petitioner, "did not have such legal interest in the person and in the estate of" the respondent "as would legally entitle them to be heard in this cause," adjudging that the respondent was a resident of and domiciled in Eliot in the county of York and was incompetent by reason of infirmity and mental incapacity to manage her own estate and to protect her rights, and appointing as her guardian a Maine bank. The hearing on the petition in Essex County began on March 22. A general appearance had been entered for the respondent in the proceeding here, and it was conceded that the respondent owned real estate and personal property in this Commonwealth. *Held,* that

(1) In the circumstances, the question of the domicil of the respondent was one not concluded under the full faith and credit clause of the Constitution of the United States by the adjudication of the court of Maine;

(2) The fact of domicil of the respondent, so far as concerned the proceeding here, was a matter to be determined by the Probate Court for the county of Essex;

(3) Under the provisions of G. L. (Ter. Ed.) c. 201, § 1, the Probate Court for the county of Essex had jurisdiction at least over the property of the respondent in this Commonwealth, and rightly could appoint a conservator.

PETITION, filed in the Probate Court for the county of Essex on March 2, 1932, for the appointment of a conservator of the property of the respondent, alleged in the petition to be of advanced age and mental weakness.

The petition was heard by *White,* J., a stenographer having been appointed under statutory provisions. The evidence at the hearing and the decree granting the petition are described in the opinion. The respondent appealed.

*C. C. Steadman,* for the respondent.

*J. J. Ronan,* (*W. A. Pew & J. A. Brickett* with him,) for the petitioner.

RUGG, C.J. The petitioner, a resident of this Commonwealth, on March 2, 1932, brought this petition as a relative of the respondent alleging that she was a resident of Salem in our county of Essex and that there was occasion for the appointment of a conservator to care for her property.

General appearances were entered in behalf of the respondent and of her next of kin. Thus the court acquired jurisdiction over the respondent. *Hersey* v. *Hersey,* 271 Mass. 545, 548. A decree was entered on April 8, 1932, reciting (1) that "it is found that the domicile of said Grace L. Flint is Salem," (2) that "by reason of mental weakness and incapacity" she "is incapable of properly caring for her property," and (3) "that she has property to a considerable amount in said Salem," and appointing a conservator to have the charge and management of said property under the direction of the court. The respondent appealed from this decree. The case was tried at length upon oral and documentary evidence. All of it has been reported and is before us in a voluminous record. The judge made no findings of material facts aside from the recitals in the decree.

Our attention has been directed to the fact that since the argument at the bar the conservator appointed by this decree has deceased. The issues raised by the appeal are not affected by this fact. It constitutes no reason why they should not be decided. The conservator did not become a party to this appeal and no argument was made in his behalf.

It was conceded at the trial by counsel for the respondent that there was within the Commonwealth a large amount of property belonging to the respondent and that she was a person proper for appointment of a conservator over her property. There is no dispute that this property includes both real and personal estate. These facts therefore are accepted as true.

The first contention of the respondent is that the trial judge was plainly wrong in finding that she was a resident of Salem. An appeal from a decree of a probate court with full report of the evidence is treated according to the practice in equity so far as practicable and applicable. *Churchill* v. *Churchill,* 239 Mass. 443, 445. *Drew* v. *Drew,* 250 Mass. 41. The familiar rule in equity is that on an appeal with full report of the evidence it is the duty of this court to decide the case upon its own judgment of the evidence giving due weight to the findings of the trial judge and not revers-

ing them unless plainly wrong. Such findings rarely ought to be reversed where they rest upon oral testimony of witnesses, because the trial magistrate, having seen them and observed their actions, has far better opportunity for testing their honesty, weighing their credibility and ascertaining the truth than an appellate tribunal can have by merely reading a transcript of evidence. Intelligent scrutiny of witnesses while giving testimony affords evidence as to the dependence fairly to be attributed to their words. Many factors as to the real value of oral testimony are incapable of being transferred to a printed page. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 144.

The ascertainment of the domicil of a person is mainly a question of fact. *Feehan* v. *Tax Commissioner*, 237 Mass. 169, 171. *Hutchins* v. *Browne*, 253 Mass. 55, 57. *Hayes* v. *Hayes*, 256 Mass. 97. General principles governing the nature, acquisition and change of domicil are settled. An exact and comprehensive definition of domicil is difficult. In general it is said to be the place of one's actual residence with intention to remain permanently or for an indefinite time and without any certain purpose to return to a former place of abode. Every one must have a domicil somewhere. Every one has a domicil of origin. A domicil once established continues until a new one is acquired regardless of changes in temporary sojourn. Mere absences from home even for somewhat prolonged periods do not work a change of domicil. Intention without the concurrence of the fact of residence is not sufficient to change or to create domicil. Both must coexist. Aspiration, hope, desire or mere verbal assertion, although evidence of intention, cannot overcome the force of irrefutable facts. Cases arise in which there is a distinction between domicil and residence. A person may have a residence in one place for various reasons comparatively temporary in nature such as performing the duties of an office, transacting a business, seeking improvement in health, pursuing pleasure or visiting relatives, and yet have his permanent home or domicil in a different place. *Harvard College* v. *Gore*, 5 Pick. 370. *Sears* v. *Boston*, 1 Met. 250. *Wilbraham* v. *Ludlow*, 99 Mass. 587. *Thayer* v.

*Boston,* 124 Mass. 132, 139, 144–146. *Borland* v. *Boston,* 132 Mass. 89. *Andrews* v. *Andrews,* 176 Mass. 92. *Marlborough* v. *Lynn,* 275 Mass. 394, 397. *White* v. *Loftus,* 275 Mass. 559.

There was evidence on the issue whether the respondent was a resident of Salem tending to show these facts: The respondent is a childless widow perhaps three score years of age. She lived for many years with her husband in a home in Salem, where without question her domicil then was. After his death in 1922 she continued to live in the same home with her mother until 1925. Then she and her mother lived at a hotel in Boston until the death of the latter in October, 1930. She then stayed at the home of friends in Salem until December, 1930, when she went to the house of her aunt in Eliot, Maine, where she has since remained. On going there she took with her a trunk, a large suit case belonging to the friend in whose home she had been staying, and a large black silk hand bag. None of her furniture has been taken to that house. She has continued to own the homestead in Salem where she lived with her husband and mother, has kept it in repair and fully furnished as when she lived in it, and some of her clothing has remained in it. When the suggestion has been made to her that she rent or sell it, she has refused to do so, saying that she might go back to it some time; she said many times that she never ought to have left it. It was frequently visited by her attorney or agent. Management of her property both real and personal was largely in the hands of the attorney in Salem who settled her husband's estate. Her checking account was in a Salem bank and the regular statements were sent to her. She has paid her income tax in Massachusetts. Evidence to this effect was largely undisputed.

There was testimony from several witnesses that she spoke of this going to the house of her aunt as a visit and that she did not know how long she would stay. She was sometimes referred to as a guest in that house. There she occupied a large room. She spent much time in bed there, did not leave her room for several weeks at a time, and cried

a good deal. There was much evidence that she had great difficulty in making up her mind upon any course of conduct. She bought no dresses while in Maine and complained to a friend that she felt like a tramp because she had so few clothes and did not feel fit to go anywhere. She appeared unhappy a great deal of the time, was blue and despondent, and complained frequently that she was lonesome and homesick, that her room was cold and her surroundings were uncongenial, that she did not know why she was there, that she never should have come there and should never have stayed there. Once she made arrangements to return to Salem but her aunt shortly afterwards telephoned to the friend with whom she was going not to come for her. There was other testimony as to facts and circumstances repugnant to the idea that she had acquired a domicil at the house of her aunt. The respondent did not testify in her own behalf. There was testimony to the effect that statements had been made by the respondent that she intended to make her home with her aunt. It is not necessary to narrate testimony, facts and permissible inferences tending to show that evidence indicating intent on the part of the respondent to make her home at the house of her aunt was untrustworthy. The trial judge would have been justified in discrediting testimony of that nature and in believing both from direct evidence and from reasonable inferences from all the facts that her domicil remained in Salem. Retention of her home in Salem, keeping it fully furnished and in repair, refusing to rent or sell it, coupled with other facts which might have been found, amply warranted the inference that she had never lost her domicil there. A careful examination of all the evidence convinces us that the finding of the trial judge that the domicil of the respondent was in Salem cannot be pronounced plainly wrong, and was justified.

It becomes unnecessary to determine whether the finding that the domicil of the respondent was in Salem might be supported on the ground that the evidence warranted the conclusion that she was in such mental condition as to be unable to form and execute an intention to change her domicil.

Exhibits were introduced showing that on the day following the filing of the present petition there was filed a petition in the Probate Court for York County, Maine, for the appointment of a guardian of the respondent, that hearings were held concluding on March 19, 1932, that decree was entered on March 21, 1932, reciting that William A. Pew (then special conservator in this Commonwealth of the estate of the respondent) and certain cousins of the respondent, including the present petitioner, "did not have such legal interest in the person and in the estate of said Grace L. Flint, as would legally entitle them to be heard in this cause," adjudging that the respondent was a resident of and domiciled in Eliot in the county of York and was incompetent by reason of infirmity and mental incapacity to manage her own estate and to protect her rights, and appointing as her guardian the First National Bank of Biddeford in the county of York. The hearing upon the present petition began on March 22, 1932.

The respondent contends that upon the introduction of this record of the Maine court it became the duty of the Probate Court to dismiss the present petition. Certain undisputed facts must be borne in mind in passing upon this contention. Confessedly the respondent was a resident of this Commonwealth, at least until December, 1930. By far the largest part of her property continued to be in this Commonwealth. Considerable real estate and most of her personal property are in Salem. Facts were in evidence, which need not be narrated, sufficient to warrant a finding that the presence of her personal property in Maine was secured through the efforts of some of her kindred not here parties shortly before the decree of the Maine court. It is manifest also, both from the recitals in the decree of the Maine court and from the transcript of the evidence heard by it which is a part of the present record, that no adversary hearing was held in that court concerning the domicil of the respondent, and that such hearing was *ex parte* with only those relatives having an interest in establishing her domicil in Maine being given an opportunity under the procedure there prevailing to be heard and present evidence. The respondent herself

did not testify in the Maine court. Counsel for the respondent in the case at bar conceded that there was occasion for the appointment of a conservator of her property. It is in the light of these facts that the question is to be determined whether the Probate Court of Essex County had jurisdiction to appoint a conservator. It was said in *Thormann* v. *Frame*, 176 U. S. 350, at page 356, "it is thoroughly settled that the constitutional provision that full faith and credit shall be given in each State to the judicial proceedings of other States, does not preclude inquiry into the jurisdiction of the court in which the judgment is rendered, over the subject-matter, or the parties affected by it, or into the facts necessary to give such jurisdiction." In an analogous case where the domicil of a party to a divorce obtained in another State of the Union was challenged it was said by Holmes, C.J., in *Andrews* v. *Andrews*, 176 Mass. 92, at page 94: "It is clear that the finding of the South Dakota court in favor of its own jurisdiction upon an ex parte hearing would not be conclusive, but the facts would be open to examination here." This decision was affirmed in 188 U. S. 14, 37, 38. *Perkins* v. *Perkins*, 225 Mass. 82, 85. *Langewald* v. *Langewald*, 234 Mass. 269. *Corkum* v. *Clark*, 263 Mass. 378, 383. A presumption is always indulged in favor of the regularity and validity of a judgment rendered by a court of general and superior jurisdiction of another State. *Tucker* v. *Columbian National Life Ins. Co.* 232 Mass. 224. *Robinson* v. *Freeman*, 236 Mass. 446. The determination by a court of one State as to the domicil of a decedent does not bind the courts of another State as to such domicil with respect to property within its territory. Each State has full jurisdiction over its inhabitants and the property within its boundaries. Adjudication of the fact of domicil by a court of one State is of no probative force upon the question of domicil raised in the courts of another State in a contest between different parties. *Overby* v. *Gordon*, 177 U. S. 214, 227. *Tilt* v. *Kelsey*, 207 U. S. 43, 51, 53. *Baker* v. *Baker, Eccles & Co.* 242 U. S. 394, 401. To the same effect are decisions of numerous State courts. *Holyoke* v. *Estate of Holyoke*, 110 Maine, 469, 472. *Colvin* v. *Jones*, 194 Mich. 670, 678. *Stark* v. *Parker*, 56 N. H. 481.

*In re Horton*, 217 N. Y. 363. *Smith* v. *Smith's Executor*, 122 Va. 341, 347. *Domenchini's Administrator* v. *Hoosac Tunnel & Wilmington Railroad*, 90 Vt. 451, 457. *De Mora* v. *Concha*, 29 Ch. D. 268; affirmed *sub nomine Concha* v. *Concha*, 11 App. Cas. 541.

The result is that the question of domicil in a case like the present is one not concluded under the full faith and credit clause of the Constitution of the United States by an adjudication of the court of a sister State rendered in the circumstances here disclosed. The fact of domicil of the respondent so far as concerns the present proceeding was a matter to be determined by the Probate Court of Essex County. *Magruder* v. *Drury*, 235 U. S. 106, 117. *Sewall* v. *Sewall*, 122 Mass. 156, 161. *Brigham* v. *Fayerweather*, 140 Mass. 411. *Hersey* v. *Hersey*, 271 Mass. 545, 553. *Thompson* v. *Whitman*, 18 Wall. 457. *Bell* v. *Bell*, 181 U. S. 175. *Brown* v. *Fletcher's Estate*, 210 U. S. 82.

It is plain that under the provisions of G. L. (Ter. Ed.) c. 201, § 1, the Probate Court of Essex County had jurisdiction at least over the property of the respondent in this Commonwealth, and rightly could appoint a conservator. No question is presented under § 32 of the same chapter. The result is that the Probate Court was not required under the Federal Constitution, art. 4, § 1, to dismiss the petition.

*Decree affirmed.*