TRADE MUTUAL LIABILITY INSURANCE COMPANY *vs.* LEWIS H. PETERS & others.

Suffolk.   December 12, 1934. — May 14, 1935.

Present: RUGG, C.J., CROSBY, FIELD, & LUMMUS, JJ.

*Corporation*, Officers and agents, Insurance company. *Assignment. Equity Pleading and Practice*, Appeal, Findings by judge. *Evidence*, Presumptions and burden of proof.

There was no illegality in an honest transaction whereby a mutual insurance company which had a deficit, computing its assets and liabilities in accordance with the requirements of G. L. (Ter. Ed.) c. 175, in substance sold to certain of its officers and directors accounts receivable so long overdue that they could not be counted among its "net assets" in determining its statutory condition, for cash in an amount equivalent to the amount of the deficit, which, although somewhat less than the face value of the accounts receivable, was greater than their actual value.

The requirement of G. L. (Ter. Ed.) c. 175, § 83, that a mutual insurance company lacking sufficient assets shall make an assessment upon its members, even if applicable in instances when the deficit is merely statutory, is not applicable where a statutory deficit is remedied otherwise.

The provisions of G. L. (Ter. Ed.) c. 175, § 64, did not entitle a mutual insurance company, which sold some of its assets to certain of its officers and directors, both to retain the money received for the assets and to repudiate the sale.

An assignment, executed on November 22 following discussion of the matter by the parties from a time early in November, of specified "accounts receivable overdue as of November 1st" covered the full amount of the accounts as they existed on November 1, not merely the amount remaining unpaid thereon on November 22; and money collected thereon between November 1 and November 22 belonged to the assignee.

Statement by LUMMUS, J., of the position of this court with respect to questions of fact upon an appeal, with a report of the evidence, in a suit in equity.

An affidavit filed in a suit in equity in support of a motion to dismiss an appeal for want of seasonable prosecution was not conclusive as to the facts on that issue even though no counter affidavit was filed.

The denial of a motion to dismiss an appeal in a suit in equity on the ground that the appellant was dilatory in procuring a transcript of the evidence was not shown to be erroneous where the facts found as to the appellant's diligence did not appear; the denial imported a finding of the facts necessary to justify it.

BILL IN EQUITY, filed in the Superior Court on July 17, 1930, and afterwards amended.

The suit was heard by *Broadhurst,* J. Material evidence and findings by him, and a final decree entered by order of *Weed,* J., are described in the opinion. The plaintiff and certain defendants appealed. The evidence was reported. Motions by the plaintiff to dismiss the defendants' appeal were denied by *Qua,* J., and *Whiting,* J., respectively. The plaintiff appealed from each denial.

*L. H. Peters,* for the individual defendants.

*D. J. Lyne, (J. P. Rooney* with him,) for the plaintiff.

*F. S. Deland,* for the defendant The Atlantic National Bank of Boston.

LUMMUS, J. The receiver of the plaintiff, a mutual accident and liability insurance corporation formed under what is now G. L. (Ter. Ed.) c. 175, § 47, Sixth, brought this bill against the president, vice-president and directors of the corporation and also its attorney and Beacon Trust Company, to set aside an assignment of accounts and notes receivable of the corporation, made in November, 1929, to the individual defendants, and an assignment of the same made soon afterwards by the individual defendants to the defendant Beacon Trust Company as security for a loan to them of $30,000. Pending the suit, Beacon Trust Company became merged in The Atlantic National Bank of Boston, and the latter was added as a party.

The corporation by statute was under the supervision of the commissioner of insurance. It was required annually, on or before March first, to file with the commissioner a statement of its financial condition on December thirty-first of the preceding year. G. L. (Ter. Ed.) c. 175, § 25.* That

---

\* For convenience, the Tercentenary Edition of the General Laws is cited, since the provisions relied on were in force in 1929 under statutes now incorporated in that edition.

section provided that "the assets and liabilities shall be computed and allowed in such statement in accordance with the rules stated in sections . . . ten, eleven and twelve." By § 1 it is provided that the "net value of policies" or "unearned premiums" shall mean "the liability of a company upon its insurance contracts, other than accrued claims, computed by rules of valuation established by sections nine to twelve, inclusive," of which §§ 10, 11 and 12 applied to this corporation. Section 1 also made it impossible to count in the "net assets" uncollected premiums or notes therefor, more than three months due. The commissioner discovered, on an examination as of August 31, 1929, made in October, 1929, that the liabilities of the company, computed according to the statute, exceeded its assets, similarly computed. An important factor in the statutory deficit was want of diligence on the part of the corporation in collecting its premiums.

Discussions followed, with respect to a method of wiping out the statutory deficit, which the commissioner determined to be $30,000. An assessment upon the policy holders (§ 83), the establishment of a guaranty capital (§ 79), reinsurance in another company (§ 20), and direct gifts of the needed amount by officers and policy holders, were all considered. It was finally decided to take the old accounts and notes for premiums, more than three months overdue and therefore not capable of being counted in the "net assets" in determining the statutory condition of the corporation, and assign them to the officers and directors for the purpose of letting them be pledged for a loan from a stranger to the officers and directors of $30,000, which would be paid into the treasury in cash. In this way the corporation would convert old and slow accounts into cash. Whatever its effect upon the real condition of the corporation, its statutory deficit of $30,000 would be repaired and would cease to exist. Of course, it was essential to this plan that the corporation should not owe the officers and directors for the $30,000 paid into the treasury.

This plan was carried out. The face value of the overdue accounts and notes assigned by the corporation to the

individual defendants, and by them to the Beacon Trust Company, was $37,366.63. The judge finds that "the transaction . . . was regarded by the parties to it, and was in fact and law a sale by the company to the individual defendants of overdue accounts for $30,000." The judge finds that the price of $30,000 paid for the overdue accounts and notes was "more than adequate, and more than they were fairly and reasonably worth." The real condition of the corporation was therefore somewhat improved by the transaction.

The assignment from the corporation was authorized on November 19, 1929, and executed on November 22, 1929. Between November 1, 1929, and November 22, 1929, $5,700 was collected by the corporation on the assigned accounts and notes, and by it paid to the individual defendants. They applied the sum towards the discharge of their notes to Beacon Trust Company. The judge held that the assignments did not cover that sum of $5,700, that that sum belonged to the corporation, and that the individual defendants must restore it to the corporation. He entered a decree affirming the validity of the assignments, dismissing the bill as against the Beacon Trust Company and The Atlantic National Bank of Boston, but ordering the individual defendants to pay the plaintiff $5,700, with interest thereon from November 26, 1929, and costs. Both the plaintiff and the individual defendants appealed.

The plaintiff contends that the whole transaction was illegal. It was, however, perfectly honest, and we find nothing in the statutes cited that made it unlawful. True, § 83 provides that a corporation lacking sufficient assets "shall make an assessment upon its members." But even if this applies to a merely statutory deficit, we do not think this requires an assessment where the statutory deficit is otherwise remedied. Section 64, we think, does not enable the corporation to retain the benefit of the $30,000 received and at the same time repudiate the assignment by which it was obtained. *Bowditch* v. *New England Mutual Life Ins. Co.* 141 Mass. 292.

We do not agree with the ruling of the judge that the

assignment covered only the amount remaining unpaid on the accounts and notes when the assignment was executed on November 22, 1929. The matter had been discussed from a time early in November. The vote was "to assign overdue accounts and overdue notes as of November 1, 1929, according to the records of the company." The assignment was of "the following accounts receivable overdue as of November 1st, 1929," followed by a list of the accounts. We think that the intention was to assign the accounts as they existed on November 1, 1929, and that money collected on them, between that date and the date when the assignment was executed, belonged to the assignees.

It is not contended that any account or note passed by the assignment unless on November 1, 1929, it was more than three months overdue. An assignment of recent accounts, which could have been counted as assets under the statute, would not have served the purpose of the plan. One accountant testified that of the $20,803.65 paid by the corporation to the assignees as money collected on the assigned accounts, only $8,413.22 could be identified as money collected after November 1, 1929, upon accounts more than three months overdue on that date. The individual defendants were in a fiduciary relation to the corporation, and must show affirmatively their right to receive money from its treasury. *Pappathanos* v. *Coakley*, 263 Mass. 401, 408. *Daniels* v. *Briggs*, 279 Mass. 87, 92. The judge evidently gave credit to the conflicting testimony of another accountant, that the entire sum of $20,803.65 had been collected after November 1, 1929, upon accounts more than three months overdue on that date, and that consequently it was properly paid to the assignees. The question was one of fact and depended upon oral testimony before the judge.

An appeal in equity opens all questions of fact, discretion and law presented by the record. *Romanausky* v. *Skutulas*, 258 Mass. 190. *Norcross* v. *Mahan*, 283 Mass. 403, 404. *Hannah* v. *Frawley*, 285 Mass. 28, 31. *Old Colony Trust Co.* v. *Third Universalist Society of Cambridge*, 285 Mass. 146, 151. *Abbott* v. *Bean*, 285 Mass. 474, 478. This court in

dealing with questions of fact weighs the reported evidence, giving due consideration to the superior opportunity of the trial judge who saw and heard the witnesses. For reasons already sufficiently elaborated in a long line of reported cases, we do not reverse findings of fact made upon conflicting oral testimony unless convinced that they are plainly wrong. *Dickinson* v. *Todd*, 172 Mass. 183. *Old Corner Book Store* v. *Upham*, 194 Mass. 101, 106. *Rubenstein* v. *Lottow*, 220 Mass. 156, 165–168. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 144. *Berman* v. *Coakley*, 257 Mass. 159, 162. *Bankers Trust Co.* v. *Dockham*, 279 Mass. 199, 200. *Tuells* v. *Flint*, 283 Mass. 106, 108, 109. *Newburyport Society for the Relief of Aged Women* v. *Noyes*, 287 Mass. 530, 532–533. *Masterson* v. *American Employers' Ins. Co.* 288 Mass. 518, 521. *Bratt* v. *Cox*, 290 Mass. 553, 557–558. *Powell* v. *Streatham Manor Nursing Home*, [1935] A. C. 243. It is not necessary in this case for us to discuss the question of fact, even though we must decide it. *Ecklund* v. *Ecklund*, 288 Mass. 517. *Bloom, South & Gurney, Inc.* v. *Mitchell*, 289 Mass. 376, 379. It is enough to say that no error in the findings of fact is shown.

A point of practice remains. The appeal of the defendants was taken on August 29, 1933. The plaintiff moved to dismiss the appeal, and supported the motions by affidavits that the appellants filed no order with the clerk for the preparation of the record until September 8, 1933, and took no steps to procure from the stenographer a transcript of the evidence until after March 24, 1934. The motions to dismiss the appeal were denied, and the plaintiff appealed from the denials.

Under the practice existing immediately prior to the enactment of St. 1931, c. 219 (G. L. [Ter. Ed.] c. 231, § 135), the clerk had the duty of procuring the transcript of evidence. *Niosi* v. *Leveroni*, 274 Mass. 115. *Martell* v. *Moffatt*, 276 Mass. 174. By that statute, the clerk was relieved of that duty, and by implication it was put upon the appellant, who became bound to use reasonable diligence in procuring the transcript. See *Cunningham* v. *First Banker's Union, Inc.* 259 Mass. 595. "If . . . an appellant . . .

neglects . . . to take the necessary measures by ordering proper copies to be prepared or otherwise for the hearing of the case," his appeal may be dismissed. G. L. (Ter. Ed.) c. 231, § 133. St. 1933, c. 300, § 2. Whether, as matter of law, the delay stated in the affidavits was unreasonable, if unexplained, is not the question before us. The affidavits are not conclusive of the facts, even though no counter affidavit was presented. *Commonwealth* v. *Millen,* 290 Mass. 406, 410. The facts actually found as to the diligence of the appellants do not appear. In the absence of contrary findings, the denial of the motions to dismiss imports a finding of all subsidiary facts necessary to justify the action taken. *Manzi* v. *Carlson,* 278 Mass. 267, 273. *Wood* v. *Oxford,* 290 Mass. 388, 390. *Old Colony Trust Co.* v. *Feldman,* 261 Mass. 231.

The present statute requires no order to the clerk for the preparation of the record until "after the case becomes ripe for final preparation and printing of the record for the full court." G. L. (Ter. Ed.) c. 231, § 135. In this case there is no suggestion that the transcript of evidence was not a necessary part of the record, which had to be filed before the case could become "ripe" for "final preparation and printing of the record." *Romanausky* v. *Skutulas,* 258 Mass. 190. *Zaff* v. *Brown,* 265 Mass. 598. *Thayer* v. *Thayer,* 277 Mass. 256, 258. It does not appear that the order was not given seasonably after the record became complete. *Donnell* v. *Goss,* 267 Mass. 444. *Dondis* v. *Lash,* 277 Mass. 477, 481. *St. Nicholas Russian Benefit Society, Inc.* v. *Yaselko,* 279 Mass. 81, 84, 85.

> *Decrees denying motions to dismiss appeals affirmed.*
> *Final decree reversed.*
> *Final decree for the defendants, with costs.*