Joseph S. Kennedy *vs.* Ernest Simmons & others.

Norfolk. February 4, 1941. --- February 26, 1941.

Present: Field, C.J., Lummus, Qua, Cox, & Ronan, JJ.

*Probate Court*, Jurisdiction, Vacation of decree. *Domicil.*

A Probate Court, after dismissing a petition for proof of a will by a decree based on other than jurisdictional grounds, properly entertained a petition to vacate such decree brought by the same petitioner and based on averments that the alleged testator at the time of his death was not a resident in or inhabitant of, and did not leave any property to be administered within, the court's county.

Evidence warranted a finding by a judge of probate that an alleged testator at the time of his death was domiciled in Millis in the county of Norfolk in this Commonwealth, and not in the State of Florida.

Petition, filed in the Probate Court for the county of Norfolk on December 29, 1939.

The case was fully heard anew by *McCoole*, J., on evidence respecting the domicil of Robert G. Simmons at the time of his death.

*J. S. Kennedy, pro se.*

*F. D. McCarthy*, for the respondents, submitted a brief.

Ronan, J. After a full hearing upon a petition filed in the Probate Court of Norfolk County by the present petitioner, praying that a certain instrument purporting to be the will of Robert G. Simmons, who was described in the petition as one "who last dwelt in Millis in the county of Norfolk" and in the said instrument as "formerly of Winter Park, in the State of Florida, but now of Millis, Norfolk County, Massachusetts," be proved and allowed as his will, the Probate Court found that the said instrument was procured by undue influence, and that Simmons at the time of executing the instrument was not of sound mind; and by a decree entered on December 12, 1939, it was ordered that the instrument be disapproved and disallowed as the last will and testament of the said decedent. Thereafter, the petitioner, on December 29, 1939, filed the present

petition, seeking to vacate the aforesaid decree on the ground that the Probate Court had no jurisdiction because Simmons was not a resident nor inhabitant of Norfolk County at the time of his death and did not leave any property to be administered in said county. After a hearing this petition was dismissed and the petitioner appealed.

No question of jurisdiction seems to have been raised at the hearing upon the petition to admit the alleged will to probate. The petitioner was not bound by any statement in the instrument offered for probate relative to the residence of Simmons, or by filing the petition in the Probate Court of Norfolk County. *Hutchins* v. *Browne*, 253 Mass. 55, 57. *Connolly.* v. *Phipps*, 283 Mass. 584, 586. Rev. Sts. c. 83, § 12, provided that the jurisdiction of the Probate Court, in so far as it depended upon the residence of any person, should not be contested in any other proceeding except by an appeal from the original decree, unless the want of jurisdiction appeared upon the record, and this provision continued in force until it was superseded by St. 1891, c. 415, making probate courts courts of superior and general jurisdiction. This statute made the previous provision unnecessary, because thereafter the decrees of the probate courts were to be given the same effect as that usually attributed to those of a court of superior and general jurisdiction. In the absence of anything in the record to the contrary it must be assumed that the decree was based upon proof of all the essential jurisdictional facts. *Farnsworth* v. *Goebel*, 240 Mass. 18. *Schmidt* v. *Schmidt*, 280 Mass. 216. *Wilbur* v. *Hallett*, 305 Mass. 554. The parties, with the consent of the judge, have put in evidence in this case that part of the testimony given at the first hearing that has any bearing upon the question of jurisdiction. There is nothing in this testimony tending to show that the judge was in error in finding, as must have been found in entering the decree disallowing the alleged will, that the decedent was domiciled in Millis.

The Probate Court has power to correct or revoke a decree on account of fraud or mistake or for want of jurisdiction. *Waters* v. *Stickney*, 12 Allen, 1. *Goss* v. *Donnell*, 263

Mass. 521. *Dolan* v. *Roy*, 286 Mass. 519. *Odde* v. *Field*, 297 Mass. 167. *Parsekian* v. *Oynoian*, 299 Mass. 543. *Knowles* v. *Newhall*, 303 Mass. 385. The decree refusing to admit the will to probate was a final decree, and the power to set it aside is analogous to that exercised by courts of common law to issue writs of review and by courts of equity to entertain bills of review. *Gale* v. *Nickerson*, 144 Mass. 415. *Crocker* v. *Crocker*, 198 Mass. 401, 404, 405. *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. 148, 153. The Probate Court was not authorized to set aside the decree because the petitioner had failed to introduce available evidence to prove that the decedent was not domiciled in Millis or because the case was not properly presented. *Renwick* v. *Macomber*, 233 Mass. 530. *Burgess* v. *Burgess*, 256 Mass. 99. *Fuller* v. *Fuller*, 261 Mass. 82. *Clarke* v. *Clarke*, 262 Mass. 297. *Pepper* v. *Old Colony Trust Co.* 262 Mass. 570. *Holyoke National Bank* v. *Dulitzky*, 273 Mass. 125. A court of equity may grant a bill of review resting entirely on new evidence which first became known to the party seeking relief after the decree, and a Probate Court may entertain a petition for a similar cause and grant appropriate relief. *Holyoke National Bank* v. *Dulitzky*, 273 Mass. 125. *Hilton* v. *Hopkins*, 275 Mass. 59. *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. 148. *Boston* v. *Santosuosso, ante,* 189, 196–197.

Robert G. Simmons shortly after the death of his wife in November, 1936, broke up his home in Lynn, and came to the old homestead of the Simmons family in Millis, in this Commonwealth, which was the home of Mrs. Balkam, his sister by adoption, and her husband. He had previously visited this place on various occasions, occupying a room known as "Bob's room". He left Millis and went to Florida in January, 1937. He returned to the homestead in Millis, in the spring of 1937, where he stayed until late in July, when he left to visit relatives in New York and then went to Florida. On January 3, 1938, he bought a parcel of land in Florida. On the back of this lot was a structure which had been built for a garage but had been altered for a dwelling and a garage. Simmons made some

improvements upon this property and put in some furnishings. Its assessed valuation was $150. He again returned to Millis where he remained from April to July, in 1938, and while here was engaged in settling his wife's estate. He then returned to Florida. His health had become impaired. On November 7, 1938, he wrote to Balkam that he had put his property on the market for sale; that when he sold it he would come to Millis; that "Florida is all right but it [*sic*] nice to be with your own"; and that he would be able to drive home if his foot improved. He had listed his property with a broker and had negotiated unsuccessfully with three prospective purchasers. On May 28, 1939, he sent Balkam a check, drawn on an account that he had in a bank in Lynn, in this Commonwealth, and requested him to come to Florida "so you can drive me home." Balkam went to Florida, closed up the house and drove Simmons to Millis where they arrived on July 1, 1939. On July 3 Simmons was taken to a hospital where he died on July 8, 1939.

There was evidence that he had filed on March 30, 1939, an application for homestead tax exemption in Florida; that he had refused to go to a hospital in Florida; that he had come to Millis for medical treatment; and that he intended to return to Florida in the autumn. But there was also testimony tending to show that during the last four years of his life he always referred to the homestead in Millis as his home; that he never called Florida his home; that he went there to spend the winters; that he had become tired of living in Florida; and that he wanted to sell his property there.

The Probate Court of Norfolk County had jurisdiction of the petition to probate an instrument purporting to be the will of Simmons if, at the time of his death, he had his domicil in that county, G. L. (Ter. Ed.) c. 215, § 3; *Emery* v. *Emery*, 218 Mass. 227; *Drohan* v. *Avellar*, 276 Mass. 441; *Connolly* v. *Phipps*, 283 Mass. 584, and the question here is whether upon the evidence, which is reported without any findings of fact, the finding of the trial judge (implied in his decree dismissing the petition) that the de-

cedent was domiciled in Norfolk County at the time of his decease was plainly wrong. *Trade Mutual Liability Ins. Co. v. Peters,* 291 Mass. 79. *Spiegel v. Beacon Participations, Inc.* 297 Mass. 398, 407.

If he came to Millis for a temporary purpose, and when it was accomplished he intended to return to Florida and resume his abode there, then his domicil remained in Florida; but if, on the other hand, while in Millis he intended to make his home there permanently or for an indefinite time and without any fixed or definite purpose to return to Florida, or if the latter purpose was uncertain or doubtful, then it could be found that his domicil was in Millis. *Whitney v. Sherborn,* 12 Allen, 111. *Barron v. Boston,* 187 Mass. 168. *Winans v. Winans,* 205 Mass. 388. *Plymouth v. Kingston,* 289 Mass. 57. *Lakeville v. Cambridge,* 305 Mass. 256.

The deceased had no occupation or employment since he retired in 1934. He had no family. He had attempted to purchase property in this Commonwealth before he acquired the property in Florida. He soon seemed to have become dissatisfied with living in Florida. He was anxious to return to Millis and planned to do so when he sold his property. The intent to return to what he termed his home became manifest as early as 1938. A finding would be warranted that thereafter he remained steadfast in that aim and design. His return to Millis might have been hastened by the condition of his health, but his determination to return did not result solely from his illness, for long before he required medical attention he had entertained that determination. The medical treatment he was receiving in Florida was not shown to have been improper or inadequate, but he declined to stay in Florida. He came to Millis not to secure medical attention which was not otherwise available but to be in a place where his relatives resided and his interests seemed to center. That his death followed shortly after his arrival in Millis is immaterial if he had formed the necessary intent to make that town his domicil. The existence of that intent was a question of fact. *Commonwealth v. Ballou,* 283 Mass. 304, 313. *Commonwealth v. Davis,* 284 Mass. 41, 49. *Doyle v. Goldberg,* 294 Mass.

105, 108. An examination of the evidence does not demonstrate that the judge, in finding that Simmons was domiciled in Millis at the time of his death, was plainly wrong. *White* v. *Stowell*, 229 Mass. 594. *Feehan* v. *Tax Commissioner*, 237 Mass. 169. *Hutchins* v. *Browne*, 253 Mass. 55. *White* v. *Loftus*, 275 Mass. 559. *Tuells* v. *Flint*, 283 Mass. 106, 109. *Cambridge* v. *West Springfield*, 303 Mass. 63. *Williamson* v. *Osenton*, 232 U. S. 619. *Gilbert* v. *David*, 235 U. S. 561. *Texas* v. *Florida*, 306 U. S. 398.

*Decree affirmed.*