JOHN S. SLATER & another *vs.* GRACE J. MUNROE & others.

Barnstable. November 13, 1942. — April 1, 1943.

Present: FIELD, C.J., DONAHUE, QUA, & RONAN, JJ.

*Domicil.*

The acquisition of a new domicil is established by proof of residence there with the intent of remaining for an indefinite period and without any fixed or definite purpose to return to a former home.

Upon the evidence in a voluminous record a finding was not plainly wrong of domicil in Harwich in this Commonwealth at the time of

her death of a widow, who formerly had been domiciled with her husband in the State of Illinois and after his death and until she died ten years later generally had resided in the summers at a summer hotel in Harwich which had been closely associated with her family history and before her marriage had been her home and of which she was a coöwner, although she resided at other places in other seasons.

PETITION, filed in the Probate Court for the county of Barnstable on October 29, 1941, for proof of the will of Susan J. Ulm.

Proceedings in the Probate Court before *Campbell,* J., are described in the opinion. The record before this court comprised nine hundred sixty-six printed pages.

*F. H. Stewart,* (*J. B. Ford* with him,) for the respondents.

*E. O. Proctor,* (*C. M. Goldman* with him,) for the petitioners.

RONAN, J. This is an appeal from a decree of the Probate Court for the county of Barnstable adjudging, after a hearing, that Susan J. Ulm, deceased, was domiciled in Harwich in said county, and denying a motion to dismiss a petition for the probate of an instrument purporting to be the will of the said decedent. The motion to dismiss challenged the jurisdiction of the Probate Court on the ground that Mrs. Ulm at the time of her death was domiciled in Chicago.

The Probate Court for the county of Barnstable had the power to hear and decide the petition if the decedent was at the time of her death domiciled in that county. G. L. (Ter. Ed.) c. 215, § 3. *Harvard College* v. *Gore,* 5 Pick. 370. *Hutchins* v. *Browne,* 253 Mass. 55. *Connolly* v. *Phipps,* 283 Mass. 584. *Kennedy* v. *Simmons,* 308 Mass. 431. The decree denying the motion to dismiss did no more than settle one of the issues presented by the petition and raised specially by the motion. It did not finally dispose of the petition, which stood in that court for further proceedings on a motion for jury issues or for a trial upon the merits excepting only the question of domicil. The decree was interlocutory in nature and was not a final decree. *Forbes* v. *Tuckerman,* 115 Mass. 115, 119. *Emery* v. *Emery,* 218 Mass. 227. *McCracken's Case,* 251 Mass. 347. *Malden Trust Co.*

v. *Brooks,* 276 Mass. 464. *Cummings* v. *Tolman,* 292 Mass. 58, 60.

Appeals from the Probate Courts conform to the practice in equity in so far as that is practicable and applicable. *School Committee of Winchendon* v. *Selectmen of Winchendon,* 300 Mass. 266. *Wiley* v. *Fuller,* 310 Mass. 597. The general practice in equity is that an appeal from an interlocutory decree, in the absence of a report by the trial judge, should not be entered in this court until after a final decree in the trial court. *Barnes* v. *Barnes,* 291 Mass. 383. *Leffler* v. *Todd,* 308 Mass. 243. *Orth* v. *Paramount Pictures, Inc.* 311 Mass. 580. Since considerable expense has been incurred in the printing of a voluminous record and as the case has been fully argued by the parties, who desire a decision upon the merits, and since an examination of the testimony contained in the transcript of evidence indicates the conclusion which ought to be reached, we deem it appropriate, but without intending to establish a precedent, to express an opinion upon the question presented. See *Atlantic Maritime Co.* v. *Gloucester,* 228 Mass. 519; *Commonwealth* v. *McNary,* 246 Mass. 46; *Moore* v. *Election Commissioners of Cambridge,* 309 Mass. 303. The judge did not make a report of the material facts. We have, however, a full report of the evidence. The entry of the decree implies a finding of every fact, permissible on the evidence, necessary to support the conclusion of the trial judge. *Glazier* v. *Everett,* 224 Mass. 184. *Berry* v. *Kyes,* 304 Mass. 56. *Marshall* v. *Landau,* 308 Mass. 239. The question now presented for decision is whether the finding appearing in the decree, that the decedent was domiciled in Harwich, was plainly wrong. *Tuells* v. *Flint,* 283 Mass. 106. *Kennedy* v. *Simmons,* 308 Mass. 431.

Mrs. Ulm, hereafter called the decedent, lived in this Commonwealth up to the time of her marriage to John W. Ulm of Chicago, in 1913. She had previously, for nearly a score of years, assisted her father in conducting a large summer hotel known as the Hotel Belmont, hereafter called the Belmont, and located in Harwich in this Commonwealth. It was admitted during the hearing "that she

was fond of the Belmont and had lived there more or less practically all her life. She loved Cape Cod and she loved Harwich and loved the Belmont." Upon her marriage she resided with her husband in Chicago, living in furnished hotel suites. He owned considerable real estate in Chicago and in the States of Indiana and California. They spent each summer, except two, during their married life at the Belmont, and travelled considerably during the winter. He died on January 27, 1931. It is undisputed that her domicil was then in Chicago. She left Chicago for Boston on April 1, 1931. Her sister, Mrs. Munroe, lived at a Boston hotel, and the decedent stayed at the hotel from April, 1931, to June 10, 1931, except for a ten-day trip to Bermuda, and on the last mentioned date she went to the Belmont where she remained until October 10, 1931. She then returned to this Boston hotel, where she leased an unfurnished suite which she furnished and occupied until April 1, 1933. During this period she and her nurse spent the summer at the Belmont, and in the winter of 1932 they made a trip to California, staying in Chicago a day or two en route each way. The decedent had another sister, Mrs. Frost, who lived at another Boston hotel and on April 1, 1933, the decedent moved to this hotel, where she lived until June, 1935. During this period she spent the summers of 1933 and 1934 at the Belmont and made a trip to California. From May 23 to June 6, 1934, and from June 4 to June 11, 1935, she was in Chicago. On her return from the Belmont in October, 1935, she leased an apartment in Brookline, where she resided until April 9, 1936. She gave up this apartment, put her furniture in storage and visited a friend in Milton until May 2, 1936, when she left for Chicago, where she stayed until June 29, 1936. She then left for a two and one half months tourist cruise to Europe. She then again visited her friend in Milton, where she stayed until December 1, 1936, when she went to California. On her way she stayed in Chicago until February 5, 1937, and on her way back she stayed in Chicago from May 1, 1937, to June 18, 1937. She came to the Belmont in June, 1937, where she lived until October, 1937. She

occupied a furnished room at a Boston hotel until December 10, 1937, when she left for Chicago, where she occupied a suite in a hotel until June 20, 1938. She was again at the Belmont during the summer of 1938. From October, 1938, to February 1, 1939, she was at a Boston hotel. She spent four days in February, 1939, in a Chicago hotel. She returned to a Boston hotel, where she stayed until she went to the Belmont in June, 1939. She returned to the Boston hotel in October, 1939, and on February 7, 1940, she went to Chicago on a visit which lasted until February 24, 1940. She returned to the Boston hotel, where she stayed until she went to the Belmont in June, 1940. In October, 1940, she returned to Boston, staying in a hotel there until February 6, 1941, when she left for Chicago, returning on April 4, 1941, to the Boston hotel, where she stayed until she left in June, 1941, to spend the summer at the Belmont. At the close of the summer season she returned to the Boston hotel. She died at Harwich on October 21, 1941, a suicide by drowning a short distance from the Belmont.

The decedent left Chicago in April, 1931, sent her rugs to Boston, and put the few pieces of furniture she owned in storage in Chicago. She closed her Chicago bank accounts, gave up her safe deposit box there, and opened a new account and also hired a deposit box in a Boston bank. She unsuccessfully endeavored to sell her various parcels of land in Chicago, all of which were unimproved, and a part if not all of which had been forfeited in 1935 for the nonpayment of taxes, but to which she had according to the evidence a right of redemption. The proceeds from the sales of the California and Indiana realties were deposited in Massachusetts savings banks. All the furniture, except a desk, which she stored in Chicago, was sold on December 2, 1934, to the warehouseman for $20. From the time the decedent left Chicago in the spring of 1931 she did not maintain any fixed place of abode in that city. She visited there for business and social purposes and had intended a short time before her death to visit there again. She always occupied a furnished hotel room on her visits there. After

the death of her husband she continued her practice of depositing her money in savings banks located in this Commonwealth, and when she died she had over seventy accounts in these banks. In substantially all of the new accounts she gave her residence or address as Harwich and changed her residence and address on the old accounts to Harwich. Beginning in 1933 she gave this address to the transfer agents of all the corporations in which she held stock. She notified California taxing authorities to change her address to West Harwich. She registered at various hotels and applied for licenses to operate motor vehicles as a resident of West Harwich. On various occasions, she stated that she was a resident of that village. In all Federal tax returns except one, and that through inadvertence, she represented herself as a resident of Chicago. The same is true of the deeds and real estate options that she executed. She is so described in the instrument offered for probate. The evidence, which was not disputed, showed that she had been advised by counsel to state that she was a resident of Chicago. Her own letters showed that her purpose was to avoid the payment of the Massachusetts income tax. She was requested by the income tax department of this Commonwealth to file a tax return as long ago as July, 1928, and attended on October 31, 1940, a conference with the taxing officials in reference to her liability to such a tax, at which she contended she was a resident of Chicago. She never paid an income tax here. There was testimony that she thought she would have to file a State income tax return here in 1942. Her sister, Mrs. Frost, had been ill for some time and the decedent stated that that was the reason why she had spent so much time in this Commonwealth. Her efforts to avoid the payment of such a tax are fully disclosed in the record and need not be repeated here. She did not vote in either Illinois or this Commonwealth. On January 2, 1940, Mrs. Frost and the decedent bought the interest of their sister Mrs. Munroe in the Belmont, and they became the sole owners until the death of Mrs. Frost on November 18, 1940. Mrs. Frost left an instrument, over which there is a contest pending, purporting

to devise her interest in the hotel property to the decedent. The decedent during the hotel season of 1940 occupied the quarters at the Belmont that her sister Mrs. Munroe had occupied when she managed the hotel. These quarters were renovated in the spring of 1941. The decedent had an interior decorator assist her in fitting them up. She had some furniture and rugs that were stored in a Boston warehouse sent to the Belmont. Her furniture was repaired. Two chairs that belonged to her mother and father were reupholstered and put in her room. She had family photographs framed and arranged in her room. She also brought considerable wearing apparel there. There was testimony that the decedent had stated that her quarters at the hotel were the only home she had; that she wanted them as comfortable as she could have them and that "she wanted her personal things around her."

The appellants contend that the evidence was insufficient to warrant a finding that the decedent had abandoned her domicil in Chicago and acquired one in Harwich. She had no children. She had no relatives in Chicago. It was natural that upon the death of her husband she should return to this Commonwealth where her nearest relatives, two sisters, resided. As the years passed she had transferred all her furniture, with the possible exception of a desk, and all her personal property of any apparent value from Chicago to this Commonwealth. She had endeavored to sell her various parcels of land in Chicago from which she had received a gross income of only $200 a year. Harwich had supplanted Chicago as her business address, and as time went on her interests and activities became more focused upon the Belmont which, since 1894, had been closely associated with her family history and to which she had become attached, first as a member of the family during the years her father conducted this hotel and later as one of the coöwners, having had a one half interest at the time of the death of Mrs. Frost, and the entire interest thereafter up to the time of her own death, if the will of Mrs. Frost is admitted to probate. She had set up living quarters in the Belmont. Her declarations and the personal nature of

the furnishings are indicative of her interest in the place and of her intent to establish a home there.

The acquisition of a new domicil is established by proof of residence in a place with the intent of remaining there for an indefinite period and without any fixed or definite purpose to return to a former home. *Palmer* v. *Hampden,* 182 Mass. 511. *Barron* v. *Boston,* 187 Mass. 168. *Winans* v. *Winans,* 205 Mass. 388. *Lakeville* v. *Cambridge,* 305 Mass. 256. The intent to establish a new home in a place with which one has long been associated by family ties and by business interests may be more readily inferred than an intent to establish a home in a place that is strange and unfamiliar to him, and the inference is strengthened where he no longer has any fixed place of abode, or a family, or an established business, at the place where he formerly lived. *Winans* v. *Winans,* 205 Mass. 388, 390.

All the activities composing the major interests of the decedent's life were centered in the Belmont. For years it had been the principal source of her income. This was a summer hotel, but there was evidence that she was there before and after the regular season, attending to matters of a personal nature. The fact that the hotel had closed and that she was living as a transient guest at a Boston hotel four or five weeks before her death is not sufficient upon this record to require a finding that her domicil did not continue to be at the Belmont. The case is stronger than those cases where a man has a summer or country residence, and also a winter home in the city, and in which it has been held that his domicil was at the summer or country home. *Harvard College* v. *Gore,* 5 Pick. 370. *Lee* v. *Boston,* 2 Gray, 484. *Thayer* v. *Boston,* 124 Mass. 132. *Barron* v. *Boston,* 187 Mass. 168.

The decedent, for reasons satisfactory to herself, could establish and maintain her home in any city or town she desired, and she could continue to retain her home at that place although one of her motives might be to avoid the payment of a tax for which she would be liable if her domicil were elsewhere. *Draper* v. *Hatfield,* 124 Mass. 53. *McConnell* v. *Kelley,* 138 Mass. 372. *Commonwealth* v. *Bogigian,*

265 Mass. 531. She could not, however, have a domicil for the purpose of taxation and a different one for the purpose of business, pleasure, social or civic activities. *Pickering v. Cambridge,* 144 Mass. 244. *Feehan v. Tax Commissioner,* 237 Mass. 169. She could have only one domicil at any particular time. *Tax Collector of Lowell v. Hanchett,* 240 Mass. 557.

The statements of the decedent in her tax returns and deeds, in the instrument offered for probate, and in some of her correspondence, that her legal residence was in Chicago, were competent evidence of her intention to retain her marital domicil. *Viles v. Waltham,* 157 Mass. 542. Those statements, however, are not conclusive. They may be sufficient to incline the scales one way or the other where the evidence presents a close question on domicil. They have little or no weight when they are inconsistent with the physical facts firmly established by the evidence or where they are contradicted by other statements of the decedent. The credibility to be accorded to those statements, and to the testimony of the various other witnesses to statements made to them by the decedent with reference to retaining her domicil in Chicago or acquiring a new one in Harwich, was for the trial judge. He was not plainly wrong in finding, as he impliedly did, that the decedent had taken up her residence in Harwich with the intent of remaining there for an indefinite time. *Holmes v. Greene,* 7 Gray, 299. *Feehan v. Tax Commissioner,* 237 Mass. 169. *Commonwealth v. Davis,* 284 Mass. 41. *Williamson v. Osenton,* 232 U. S. 619. *Gilbert v. David,* 235 U. S. 561. *Texas v. Florida,* 306 U. S. 398.

Neither of the two exceptions taken to the admission of evidence needs to be discussed, for this evidence, which was directed to two particular matters, added nothing material to the testimony relative to these matters already in the case, including admissions of the decedent, and so could have had slight, if any effect, upon the ultimate conclusion reached by the trial judge.

*Appeal dismissed.*